449 A.2d 735

**AUGUST PETROLEUM COMPANY 77B a Limited Partnership**

v.

**Isabel CASCIOLA, Thomas Casciola and James Miller, Appellants.**

**AUGUST PETROLEUM COMPANY 77B a Limited Partnership, Appellant,**

v.

**Isabel CASCIOLA, Thomas Casciola and James Miller.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1981.

Filed Aug. 20, 1982.

Jerome Hahn, Williamsport, for Casciola and Miller, appellants (at No. 1260) and appellees (at No. 1277).

Sanford Finder, Williamsport, for August Petroleum, appellant (at No. 1277) and appellee (at No. 1260).

Before CAVANAUGH, MONTEMURO and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This case is before us on cross-appeals. The Plaintiff, August Petroleum Co., 77B, a Limited Partnership, headquartered in New York City and registered in the Commonwealth of Pennsylvania as an oil and gas operator (hereinafter, August), filed a Complaint in equity seeking an injunction to restrain the Defendants, Isabel Casciola and Thomas Casciola,[1] the owners of the surface of the land, from interfering with August's drilling and operating two gas wells on the Casciola property, and for damages because of delays which resulted from interference by the Casciolas.

The Casciolas denied such interference or liability for damages, and, by way of Counter-Claim, sought a mandatory injunction requiring August to remove from the Casciola property a three-inch gas line installed by August, and also sought compensation for damages allegedly caused by August's unauthorized installation.

---

1. James Miller was dismissed as a defendant by stipulation.

The decree of the Chancellor grants injunctive relief to both parties, restraining the Casciolas from interfering with August's completion and operation of two gas wells on the Casciola property, and ordering August to remove the pipeline, but denying the claims of both parties for damages. Exceptions to the decree by both August and the Casciolas were dismissed, and the decree was affirmed by the Court en banc. We affirm the decree of the Lower Court.

The land involved in this dispute consists of approximately 104 acres in Cecil Township, Washington County (hereinafter, the Casciola property), purchased in 1947 by Isabel Casciola and her husband (who died December 2, 1976) from Pittsburgh Consolidated Coal Company, the predecessor of Consolidation Coal Company (hereinafter, Consolidation). Isabel Casciola deeded a home site on a portion of the property to her son, Co-Defendant Thomas Casciola. The property fronts on State Route 50 at its intersection with Muse-Cecil road. A right-of-way of the Montour Railroad, which runs in an east to west direction, effectively bisects the property, approximately half lying to the north of the railroad along Route 50, and an approximately equal acreage to the south. The Casciola property is bounded on the South by what is known as the Scoggins property.

The deed to Isabel Casciola and her now deceased husband excepts and reserves from the conveyance, in favor of the Grantor, it's successors and assigns:

All the oil and gas in and underlying said land, with the right to drill and operate thereon for the production of said oil and gas, without liability for damages to the surface of said land, the buildings or crops thereon, or any other damage in connection with the operation thereon for said oil and gas.

The surface of the Casciola property is in the beginning stages of development. Three members of the Casciola family have built homes on it. Two lot plans have been approved and recorded, one north of the railroad planned for commercial development along Route 50, and the other a plan of residential development south of the railroad. In

1977, a plan as yet unrecorded was proposed by James Miller, a real estate consultant to Mrs. Casciola, for the development of the remaining property for both residential and commercial purposes, including a proposed sewage treatment plant on a portion of the property north of the railroad. None of these plans had been further implemented at the time of trial in the Court below.

On May 22, 1978, Isabel Casciola granted August a right-of-way over her property for a two-inch pipeline for the transportation of water, oil, or gas from the Scoggins property line on the South to a meter site on Route 50 to the north, where the proposed line would connect with a larger gathering line of Peoples Natural Gas Company. The right-of-way agreement was written in two parts, one for the land south of the railroad and the second for the land to the north. A third agreement, signed contemporaneously, authorized the installation of a meter regulator at the northern terminus of the line where the line would connect with the Peoples line. Mrs. Casciola was paid $3,500 for the three grants.

The two right-of-way documents are identical in terms. The location of the line was not described in any of the grants, although Mrs. Casciola testified that it was verbally agreed with the negotiating representative of August that the line should be laid along either the east or the west perimeter of the property to the south of the railroad, and then in a direct line across the Casciola property to the north of the railroad to Peoples gathering line adjacent to Route 50. Representatives of August denied the existence of any such understanding. They testified that the only limitation negotiated had been the language in the right-of-way agreements about a possible relocation of the right of way.

The right-of-way agreements provide that:

In the event said pipeline interferes with the construction of any streets, roads, houses, or for the erection thereon of buildings of a permanent nature, the Grantee shall, at its own expense, relocate the said pipeline to another location on the land of the Grantor, location to be

mutually determined by both parties, said location to be supplied free of all cost by Grantor to Grantee.

On or about September 22, 1978, Consolidation entered into a letter agreement with August to grant August the right to earn an oil and gas lease covering Consolidation's oil and gas interests in certain described lands in Cecil Township, including the Casciola property. By its terms, August was to commence the drilling of a test well within 120 days from the date of the agreement, and was to proceed with due diligence to drill to a specified depth. If the well was completed and capable of producing oil or gas in paying quantities, August would earn the right to a lease of Consolidation's oil and gas rights to a specified depth on the Casciola property and others adjoining it. The judgment of Consolidation was to be conclusive as to whether the well was capable of producing in paying quantities. If in the judgment of Consolidation August earned the lease, it was to be dated back to September 22, 1978.

Very shortly thereafter, August, without consultation or notification to either of the Casciolas, laid a three-inch pipeline across the Casciola property, beginning at a point adjacent to a gas well on the Scoggins property immediately to the south of the Casciola property, and continuing northward in a straight line over the approximate center of the Casciola property to the proposed connection with the gathering pipeline of Peoples Natural Gas Co. adjacent to Route 50 on the northern line of the Casciola property, a distance of about 1,600 feet. Thomas Casciola learned that the pipeline had been laid at or about the time of installation, but made no complaint. He did not learn until the following spring that it was a three-inch line.

In January of 1979, August began drilling the test well authorized in the September 22, 1978 agreement with Consolidation. It was known as Consolidation Well No. 1, and was located in the southwest corner of the Casciola property. James Miller, a realtor representing Mrs. Casciola, questioned the representative of August at the site as to the right of August to be on Casciola property, and was told that August had a lease from Consolidation.

In April, 1979, August surveyed for a site for a second well on the Casciola property near the house of Thomas Casciola, who told the surveyors that they were trespassing. On the advice of an August geologist, the well was never drilled.

Later in the same month, a representative of August informed Thomas Casciola that August was surveying a site for a third well on the Casciola property, to be known as Consolidation Well No. 3. Mr. Casciola told the August representative that August should not proceed without the consent of Isabel Casciola. Following this encounter, the Casciolas employed an attorney, Richard Ferris, who inspected the Casciola property with James Miller, the Casciola real estate consultant. It was on the occasion of this inspection that they discovered that August had installed a three-inch pipeline instead of the authorized two-inch line. On or about May 1, 1979, Attorney Ferris advised August by letter that the pipeline was larger than the one agreed upon, and that the proposed Well No. 3 would interfere with the planned development of the Casciola property. The letter concluded with the request that August desist from further activity until the matter was resolved. The letter was never answered.

Between March 20 and June 1, 1979, Delta Drilling Company drilled six wells for August on properties in Cecil Township other than the Casciola property. Delta's contract with August was on a per diem rate for use and operation of its drilling rig, including a stand-by charge of $1,200 a day when the rig was shut down while waiting for instructions from August or for materials or services to be supplied by August.

On June 1, 1979, August directed Delta to prepare the site for drilling Consolidation Well No. 3 on the Casciola property. Delta entered the property at once, and began to construct an access road and to clear a drilling site. Thomas Casciola demanded that Delta quit operations because August had failed to show that it had a right to be on the Casciola property. On June 7, Delta ceased preparatory

work on the drill site until the controversy was resolved. Discussions between representatives of August and Casciola led to no agreement, and on Sunday, June 10, 1979, August undertook to proceed with the preparations of the drill site under the protection of security guards and over the protest of Thomas Casciola. Thomas Casciola then called the Cecil Township police to halt the work by Delta. After two visits to the scene by the police, Delta ceased operations.

On the next day, June 11, 1979, August filed its Complaint in equity, seeking an injunction against interference, and asking damages to cover the stand-by charges of Delta from June 2.

On the same day that the suit was filed, June 11, 1979, Consolidation signed an oil and gas lease with August, dated back to September 22, 1978, granting to August the right to drill for oil and gas on the Casciola property. The lease was delivered to August the following day, June 12, 1979.

On June 15, 1979, by stipulation in this litigation, Casciola agreed not to interfere with the drilling of Well No. 3 and the continued operation of Well No. 1, without prejudice to the rights of the parties if they were unable to reach an agreement as to their respective rights on the Casciola property. No agreement was ever reached.

The Court below heard the testimony of the parties on both the Complaint and Counter-Claim at various dates between December 17, 1979 and May 19, 1980. The Chancellor filed his Opinion and entered the Court's Decree Nisi on August 13, 1980. Exceptions were dismissed by the Court en banc on November 25, 1980.

The Lower Court's Decree directs Isabel and Thomas Casciola not to interfere with or obstruct August in the drilling, mining and production of oil and gas from Consolidation's Wells Nos. 1 and 3 on the Casciola property. This was clearly appropriate on the basis of the oil and gas lease which August obtained from Consolidation on June 12, 1979, and this portion of the Decree is not challenged by the Casciolas on appeal.

■ The ruling of the Court below that no damages should be awarded for the stand-by charges incurred by August is also correct for the very fundamental reason that August did not obtain a right to enter the Casciola property until it obtained its lease of the oil and gas rights from Consolidation on June 12, 1979 (the day after August started this litigation).

It is urged upon us that the lease by its terms was made retroactive to September 22, 1978, and that this retroactivity is an answer to the Casciolas' right to resist entry on their property at any time after that date. The rights of August and Consolidation, as between themselves, are no doubt dated back to September 22, 1978; but this retroactivity, which came into existence for the first time on June 12, 1979, when the lease was delivered, cannot change the fact that when Thomas Casciola protested the activities at Well No. 3 between June 1 and the date of suit, there was no oil and gas lease in existence between August and Consolidation, so that his protests were justified.

■ Even if we gave the requested effect to the retroactive date of the lease and treated the lease as though it had in fact been in existence since September 22, 1978, the Casciolas would have been within their rights in protesting entry upon their property until August had shown them evidence of its authority to come upon the property. This it never did, although repeatedly asked to do so in the three-month period prior to suit, for the very good reason that such authority did not exist until the day after suit was filed. Unless a property owner has a right to demand proof of authority to enter upon his property, a trespasser could simply assert that it had such a right and the owner would be helpless to protect himself against unlawful trespass.

We next consider the Counter-Claim of Mrs. Casciola, in which she seeks a mandatory injunction to require the removal of the three-inch pipeline and damages for its installation.

■ The Lower Court granted such an injunction and directed the removal of the pipeline. This was plainly appropriate because August was a willful trespasser in installing a three-inch pipeline in full knowledge that its right-of-way agreement authorized only a two-inch line. August offered no explanation or excuse for its conduct. It simply made a unilateral decision, undisclosed to the Casciolas, to install the larger pipeline. The three-inch line constitutes a continuing trespass on the property of the Casciolas until removed. *Sigal v. Manufacturers Light & Heat Co.*, 450 Pa. 228, 238, 299 A.2d 646, 650 (1973).

■ August contends that the requirements that the pipeline be removed is unreasonable, and that Isabel Casciola should be limited to an award of damages. This argument overlooks the fact that August has no right of eminent domain and consequently no right to compel Mrs. Casciola to sell them a three-inch pipeline across her property.

■ August makes the further argument that once the construction of the pipeline was completed, the controversy became moot and injunctive relief inappropriate. The same argument was made and answered in *Sigal*, 450 Pa. at 232–33, 299 A.2d 646, wherein the Court stated:

The appellee has relied on various cases to sustain its contention that a controversy is moot if the act to be enjoined has been completed. The cases cited by appellee are: [citations omitted]. The appellee is correct that in the cited cases the act to be enjoined had been completed and equity did not give any relief. In all these cases, however, equity declined to act, not because the act sought to be enjoined had been completed, but because any relief, other than injunctive relief, would have been inappropriate. In none of the cases cited was there a continuing trespass or any other circumstances which required equitable relief in order to complete the litigation.

The Decree of the Court below also authorized August to replace the three-inch line, if it so desires, with a two-inch line in the same location as the present three-inch line. The

Casciolas object to the authorized location of the two-inch line, contending that the right-of-way should follow the perimeter of Mrs. Casciola's property south of the railroad right-of-way, instead of directly across it as at present. The right-of-way agreements granted by Mrs. Casciola do not specify any definite location for the pipeline or any specific wells to be served by it. The Chancellor found no evidence of fraud, accident, or mistake in their negotiation or issuance. The grants simply describe the Casciola property by boundary lines, and authorize a right-of-way across it. The Casciolas contend that there was a verbal understanding prior to the grants that the pipeline should follow the east or west perimeter of the property south of the railroad. August has offered testimony that there was no such understanding.

Each of the agreements further provides that Mrs. Casciola may compel August to relocate this pipeline at its own expense if the pipeline interferes with the construction of any street, road, house, or the erection on the property of buildings of a permanent nature, upon request by Isabel Casciola, the new location to be agreed upon by the parties or arbitrated. This would not be needed if the pipeline were to follow the perimeter of the property.

■ The Court further noted that Thomas Casciola had known of and acquiesced in the location of the line when it was laid, and concluded that no agreement to follow the perimeter had been made. This finding, affirmed by the Court en banc, has the effect of a jury verdict. *Krosnar v. Schmidt, Krosnar McNaughton Garrett Co.*, 282 Pa.Super.Ct. 526, 534, 423 A.2d 370 (1980).

The Casciola property is not presently being developed, although plans for its development exist. While there was no agreement between the parties as to the precise location of the present pipeline, no objection was made to its location at installation, and the Lower Court determined that the existing route was not unreasonable at this time. We agree. The present right-of-way having been located with the acquiescence if not the consent of the Casciolas, a change cannot be compelled by them except within the ambit of the

right-of-way agreements. *Pennsylvania Water and Power Company v. Reigart,* 127 Pa.Super.Ct. 600, 193 A. 311 (1937).

The Lower Court denied the Casciola claim for damages because of the unauthorized installation of the three-inch line. They had offered testimony that the value of the property had depreciated by $90,000 because of the installation of the line. The Court pointed out that under the right-of-way agreements, Isabel Casciola could have compelled its removal at any time if it interfered with the development of her property. The Court concluded that she had failed to prove that the location of the pipeline right-of-way as presently located interfered with the development of her property, or that August had unreasonably refused to relocate the line upon request.

The Casciolas make the argument that August should have been required to account for the profits realized by it from the operation of the three-inch line, on the premise that they constitute unjust enrichment from an unauthorized use of the Casciola property. This issue was not raised in the Court below, either before the Chancellor or the Court en banc; consequently, it cannot be considered here. *Whistler Sportswear, Inc. v. Rullo,* 289 Pa.Super.Ct. 230, 240, 433 A.2d 40 (1981); Pa.R.C.P. 1518.

The order of the court below is affirmed.