527 A.2d 1008

**D.A. HILL COMPANY**

**v.**

**CLEVETRUST REALTY INVESTORS, Appellant.**

**ERIE FLEXUME SIGN CORPORATION and Felheim Roofing Company**

**v.**

**CLEVETRUST REALTY INVESTORS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 3, 1986.

Filed May 5, 1987.

Reargument Denied July 7, 1987.

James M. Baggett, Pittsburgh, for appellant.

Eugene J. Brew, Jr., Erie, for D.A. Hill, appellee.

John R. Wingerter, Erie, for Erie Flexume, appellee.

Before CAVANAUGH, WIEAND and JOHNSON, JJ.

PER CURIAM:

Affirmed.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

A careful review of the evidence in this case persuades me that D.A. Hill Company (Hill) and Felheim Roofing Company (Felheim) failed to prove causes of action for unjust enrichment against CleveTrust Realty Investors, Inc. (CleveTrust). Therefore, I must respectfully dissent from the majority's affirmance of the judgments entered by the trial court.[1]

CleveTrust agreed to provide construction financing for the Edinboro Mall in Erie County pursuant to a construction loan agreement with Edinboro Development Company (Edinboro), the owner of the land. Pursuant to the terms of that agreement, CleveTrust was to advance the sum of $2,200,000.00 for the construction of the mall, with the loan being secured by a first mortgage. Edinboro then engaged a general contractor, Drakes Mills Development Co., to perform the construction work. Hill and Felheim were subcontractors on the job.

---

1. Judgment was also entered for George H. Althof, Inc. Although CleveTrust filed a notice of appeal from this judgment to No. 1532 Pittsburgh, 1985, that appeal has been discontinued. The propriety of the judgment entered for George H. Althof, Inc., therefore, is not before this Court.

Construction began in March, 1974. The established payment procedure was for each subcontractor to submit to the general contractor cost invoices for labor and materials which it had provided during the preceding month. After receiving the invoices, the general contractor would prepare an application for payment which was then given to an architect, who was selected by CleveTrust, for approval. The amount requested in each application for payment was itemized by the general contractor according to forty-eight descriptive categories of work performed by subcontractors. In any given application for payment, however, it was possible for the amount invoiced by a single contractor to be reflected in more than one category of work, and for the work of more than one subcontractor to be included within each category. The names of the subcontractors performing work under each category were not disclosed on the applications. Following approval by CleveTrust's architect, each application for payment was forwarded to the property owner who, in turn, sent the application to CleveTrust for payment. Upon receipt of these applications for payment, CleveTrust wired the requested amount to a title company with instructions to disburse the funds to the property owner. The owner would then issue a single check to the general contractor in an amount sufficient to pay the invoices of the subcontractors. Each of the first eight applications for payment submitted by the general contractor were paid by CleveTrust.

On November 1, 1974, the owner of the mall defaulted in the terms of the loan agreement by failing to make a required payment of interest. Five days later, CleveTrust received from the owner the ninth application for payment. Exercising its right under the construction loan agreement, CleveTrust refused to disburse further funds. At the time of Edinboro's default, CleveTrust had advanced a total of $1,903,891.13.

Upon learning of the property owner's financial difficulties, the general contractor stopped work in December,

1974. Thereafter, several subcontractors, including Hill and Felheim, filed mechanics' liens against the owner to recover costs of labor and materials for which they had not been paid. When the owner refused to pay their claims, the subcontractors commenced an action in assumpsit against the owner and the contractor based on their mechanics' lien claims. Edinboro, the owner, filed a motion for summary judgment, arguing that the subcontractors' claims were barred by waivers of the right to file mechanics' liens which had been signed by the general contractor and filed prior to the commencement of construction. The trial court agreed and granted the owner's motion for summary judgment. A panel of this Court affirmed. *Hill v. Edinboro Development, Inc.*, 278 Pa.Super. 324, 420 A.2d 562 (1980).

The owner failed to make monthly interest payments due for the month of December, 1974, and for the months of January and February, 1975. On February 19, 1975, therefore, CleveTrust instituted foreclosure proceedings on its first mortgage. After the owner had filed a petition for bankruptcy, the trial court appointed a receiver to manage Edinboro's assets and to operate its business. CleveTrust's foreclosure action was thereafter stayed. When this stay was subsequently removed, the sheriff, on December 12, 1975, sold the mall property to CleveTrust for taxes and costs in the amount of $120,921.05. The deed to the mall property was recorded on May 27, 1976.

Nearly five years later, the appellee-subcontractors instituted actions in equity against CleveTrust on the theory that CleveTrust had been unjustly enriched when it purchased the mall, because it had received the benefit of appellees' work on the project without having advanced the total amount of loan funds. CleveTrust, in its answer, contended that it had not been enriched because the value of the mall at the time when it acquired title had been less than the amount of loan funds which it had advanced. Moreover, CleveTrust contended, the funds which it had advanced to the owner for the categories of work per-

formed by subcontractors had exceeded the cost of labor and materials which the subcontractors had invoiced and for which they had been paid.

The cases were consolidated for trial without jury. At the conclusion thereof, the trial court held that because CleveTrust had only advanced $1,903,000.00 of its $2,200,-000.00 loan commitment, the subcontractors were entitled to full recovery of their claims on grounds that CleveTrust had been enriched unjustly. CleveTrust filed exceptions to the trial court's decision, and these were reviewed by the court en banc. That body remanded the case to the trial court for reconsideration in light of this Court's decision in *Gee v. Eberle,* 279 Pa.Super. 101, 420 A.2d 1050 (1980). According to *Gee,* the court en banc explained, the key issue was whether sufficient funds had been disbursed by CleveTrust to satisfy appellees' claims. The trial court conducted a hearing on this issue, after which it entered an order awarding $27,674.60, plus six percent interest, to Hill and $10,887.20, plus interest, to Felheim. CleveTrust's exceptions to this second adjudication by the trial court were dismissed, and judgments were entered on behalf of Hill and Felheim in the amounts which had been awarded by the trial court. CleveTrust appealed.

"The applicable standard of review in the consideration of an appeal from a final order in equity is well-settled. The findings of fact of a chancellor have the effect of a jury verdict and if based on legally competent and sufficient evidence, will not be disturbed on appeal. *Snellbaker v. Herrmann,* 315 Pa.Super. 520, 462 A.2d 713 (1983); *August Petroleum Co. 77B v. Casciola,* 303 Pa.Super. 374, 449 A.2d 735 (1982); *Wright v. Buckeye Coal Co.,* 290 Pa.Super. 231, 434 A.2d 728 (1981). However, it is the duty and function of [a reviewing] [c]ourt to scrutinize the inferences and legal conclusions drawn from those facts. *Silo Realty Corp. v. Redevelopment Authority of City of Philadelphia,* 289 Pa.Super. 67, 432 A.2d 1053 (1981); *McDole v. Duquesne Brewing Co. of Pittsburgh,* 281 Pa.Super. 78,

421 A.2d 1155 (1980). If an error of law or an abuse of discretion [has been] committed, the decision of the [trial court] must be reversed. *Dudash v. Dudash,* 313 Pa.Super. 547, 460 A.2d 323 (1983)." *Biglan v. Biglan,* 330 Pa.Super. 512, 518, 479 A.2d 1021, 1024 (1984).

Apart from special statutory rights and a possible recovery for unjust enrichment, the decided cases hold unequivocally that a subcontractor who has furnished labor and/or materials for construction on the land of another has no right to recover therefor against the landowner, or against a construction lender, in the absence of a contractual relationship between them. See: Annot., *Building and Construction Contracts: Right of Subcontractor Who Has Dealt With Primary Contractor to Recover Against Property Owner in Quasi Contract,* 62 A.L.R.3d 288 (1975). In the instant case, the subcontractors did not enjoy a contractual relationship with the lender, and the subcontractors had also waived the right to assert a claim under the Mechanics' Lien Law. Therefore, they attempted to establish a cause of action on the grounds of unjust enrichment.

The theory of unjust enrichment is founded on the principle that when a person receives a benefit from another, and it would be unconscionable for the recipient to retain that benefit, equity can be done only by requiring the recipient to make restitution. See: *Myers-Macomber Engineers v. M.L.W. Construction Corp.,* 271 Pa.Super. 484, 490, 414 A.2d 357, 360 (1979). In order to recover under the theory of unjust enrichment, "there must be both (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied." *Meehan v. Cheltenham Township,* 410 Pa. 446, 449, 189 A.2d 593, 595 (1963). The burden of proving the existence of these elements is upon the party seeking restitution. See: 66 Am.Jur.2d *Restitution and Implied Contracts* § 88.

For purposes of analyzing a claim for unjust enrichment, an "enrichment" is deemed to be the value of the benefit

conferred by the claimant upon the adverse party. See: *Id.* In order to show that a financial benefit has been conferred, the party seeking restitution "cannot merely allege its own loss as the measure of recovery, i.e., the value of the labor and material expended—but instead must demonstrate that [the lender] has in fact been benefitted." *Meehan v. Cheltenham Township, supra,* 410 Pa. at 450, 189 A.2d at 595 (footnote omitted). "Where the value of the benefit differs from the amount of the loss, and the recipient is free from fault, the amount of recovery is generally limited by the value of the benefit." *Id.* n. 5, citing Restatement, *Restitution* § 1, comment e (1936). See: *Berman v. Herrick,* 346 F.2d 116, 118 (3d Cir.1965), quoting *West v. Peoples First National Bank & Trust Co.,* 378 Pa. 275, 286, 106 A.2d 427, 433 (1954). Thus, where a subcontractor seeks restitution for work performed on a construction project, recovery by the subcontractor will be measured by the value of the benefit conferred by the subcontractor, not by the rates or prices charged by the subcontractor for labor and materials expended during the project. See: *Berman v. Herrick, supra; Meehan v. Cheltenham Township, supra.* See also: Annot., *supra,* 378 Pa. at 292, 106 A.2d at 427.

The subcontractors in the instant case failed to prove the extent to which the shopping mall had been enhanced, if at all, by their work. They offered only their unpaid invoices. These invoices, however, reflected the costs of labor and material expended and also profit allowed by their agreements with the general contractor. Under these circumstances, it cannot accurately be said that the invoices represented benefit received by CleveTrust as a result of work performed and materials supplied by the subcontractors.

Moreover, "[i]f the lender has in fact made advances to pay for the work of a subcontractor, it has satisfied its obligation—so far as it is concerned, it has paid for the work—and the subcontractor may not claim part of the proceeds of the profit [if the premises are resold] on an unjust enrichment theory. If, however, the lender has not

made advances to pay for the work of the subcontractor, the subcontractor *may* be entitled to recover from the lender on a claim of unjust enrichment." *Gee v. Eberle, supra* 279 Pa.Super. at 123, 420 A.2d at 1062 (emphasis added). Thus, each subcontractor's claim must be carefully examined to determine whether it was covered by prior advances made by the lender. Where the amount disbursed by the lender exceeds the value of the subcontractor's work, the subcontractor's claim for unjust enrichment will fail even though he did not in fact receive all of the sums advanced. *Id.*, 279 Pa.Superior Ct. at 120, 420 A.2d at 1061.

Felheim was unable to show that CleveTrust had failed to advance moneys sufficient to cover its invoices prior to the owner's default. Felheim had performed work under categories ten and eleven. It had invoiced CleveTrust a total of $77,900.00. CleveTrust had advanced $97,984.80 for work done on these categories. Of this amount, $58,760.00 had been paid to Felheim by the general contractor. Although the trial court found that other subcontractors had also done work under these categories, there is no evidence with respect to the work which they had done or the amount which they had invoiced for such additional work. Thus, the record does not support Felheim's contention that Cleve-Trust's advances were insufficient to pay its invoice in full. Because the amount advanced by CleveTrust ($97,984.80) exceeded the amount invoiced by Felheim ($77,900.00), Fel-heim's evidence failed to establish that CleveTrust had been unjustly enriched by virtue of the work which Felheim had performed.

Even if the subcontractors had been able to establish that CleveTrust was benefitted by the work which they had performed, they would not be entitled to recover from the lender unless the lender were enriched *unjustly*. This, too, the subcontractors failed to prove. Under the circumstances of this case, it would not have been unjust to deny the subcontractors' claims. "The legislature in Pennsylvania has by statute provided the mechanics' lien as a means by

which a contractor or subcontractor can obtain security for work done." *Myers-Macomber Engineers v. M.L.W. Construction Corp., supra* 271 Pa.Super. at 491, 414 A.2d at 361. The appellee-subcontractors elected to forego this remedy. They consented to a waiver of their rights to file mechanics' liens prior to the commencement of construction and relied upon the credit of the general contractor. Equitable principles do not require or even recommend that the subcontractors be permitted to seek restitution five years later from the construction lender whose conduct throughout the period after the owner's default was proper and in keeping with its rights under the construction loan agreement. This is especially true in view of the fact that the value of the mall at the time it was purchased by the lender at sheriff's sale was not shown to exceed the sums which it had advanced or the loss which it had sustained as a result of the owner's default.

It was undisputed that CleveTrust had advanced the sum of $1,903.891.13 for mall construction. At the time of the sheriff's sale, CleveTrust notes, its claim for unpaid principal, interest and penalties was in the amount of $2,227,-400.00. The trial court did not make a finding with respect to the value of the mall at the time of the sheriff's sale but found that the mall at the time of default, a year prior to the sheriff's sale, had an approximate value of $2,000.000.00. At this time, the estimated cost of completing the mall was $100,000.00. Thus, the evidence did not show that the lender had acquired an asset whose value exceeded the advances and costs which the lender had paid for it. Under these circumstances, the equities of the lender were equal or superior to those of the subcontractors.

I would reverse the judgments entered in favor of the subcontractors.