**COMMONWEALTH of Pennsylvania, PENNSYLVANIA GAME COMMISSION, Plaintiff**

v.

**SENECA RESOURCES CORPORATION, Defendant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2013.

Decided Jan. 27, 2014.

Bradley C. Bechtel, Chief Counsel, Harrisburg, for plaintiff.

David R. Overstreet, Pittsburgh, for defendant.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Seneca Resources Corporation (Seneca) filed preliminary objections to the Com-monwealth of Pennsylvania, Pennsylvania Game Commission's (Commission) Complaint seeking injunctive and declaratory relief against Seneca[1] relative to development of oil and natural gas under State Game Lands 39 in Venango County, Pennsylvania. The issues for this Court's review are whether the Commission's claims are justiciable, and whether the Commission's Complaint states a cause of action upon which relief may be granted. We overrule in part and sustain in part Seneca's preliminary objections.

By May 28, 1928 deed, Sancrik Lumber Company (Sancrik) transferred to the Commission four tracts of land comprising approximately 3,171.58 acres (Contract L–81) (1928 Deed). The 1928 Deed expressly excepted and reserved "all the oil and gas in or under the herein[-]described lands, with the right to operate for same by ordinary means now in use." Complaint Ex. A at 9.

In a November 27, 1929 deed, Sancrik granted and conveyed to United Natural Gas Company (United Natural Gas) (1929 Deed)

all the petroleum oil and natural gas in and under or which may be produced from the following described tracts of land situated in the Townships of Mineral, Victory and Irwin, County of Venango and State of Pennsylvania. . . .

. . . .

---

1. With its Complaint, the Commission filed a motion for preliminary injunction. Seneca filed an answer to the Commission's motion. On June 28, 2013, the parties stipulated that since "Seneca has no current plans to access the oil and gas in the Property until such time as the parties' respective rights therein are determined by the Court[,]" the motion for preliminary injunction was withdrawn without prejudice, and Seneca agreed to provide 60 days advance notice of its intent to drill for oil or gas in the Property. Stip. at 2. By July 3, 2013 order, this Court continued the motion for preliminary injunction subject to the parties' agreement.

*TOGETHER* with the right to enter upon all of the above[ ]described tracts of land at any and all times, for the purpose of operating for, producing and removing said petroleum oil and natural gas in the usual and ordinary manner. Complaint Ex. C at 1, 8–9.

By October 15, 1932 deed, Sancrik transferred to the Commission four tracts of additional land totaling approximately 483.2 acres (Contract L–368) (1932 Deed). The 1932 Deed expressly excepted and reserved "all petroleum oil and natural gas together with the right to prospect for, drill and bore for, produce and remove the same." Complaint Ex. B at 5.

In its Complaint, the Commission avers that Seneca's rights contained in Contracts L–81 and L–368 (collectively, the Property) derive from the exceptions and reservations contained in the 1928 Deed and the 1932 Deed surface land conveyances to the Commission, and the 1929 Deed conveying Sancrik's oil and gas rights to United Natural Gas, since "[i]t is believed, and therefore averred that United Natural Gas merged with Seneca...." Complaint at ¶ 9.[2] The Commission further alleges that "Sancrik is the common Grantor of both [the Commission] and [Seneca]." Complaint at ¶ 8.

Seneca drilled a vertical test well targeting unconventional shale gas formations in Contract L–81. Complaint at ¶ 11. The Commission asserts that "Seneca plans on drilling horizontal wells on multiple well pads targeting unconventional shale gas on Contract L–81 by way of methods not ordinarily used during the time of the [conveyance] severance ... and has, in fact, permitted at least one well for that purpose." Complaint at ¶ 12. The Pennsylvania Department of Environmental Protection issued to Seneca on December 20, 2012 Well Permit No. 37–121–45122–00–00. Seneca's Prelim. Obj. Ex. 1. The Commission contends that since modern horizontal drilling methods and hydro-fracking were not developed at the time of the Property transfers, Sancrik could not have contemplated nor intended to reserve the right to burden the surface estates with the wells, well pads, water impoundments and water usage necessary for those processes.

In Count I of its Complaint, the Commission seeks a declaration from this Court that the Commission "has ownership of the oil, gas and development rights" associated with modern extraction of the oil and gas subject to Contract L–81 (1928 Deed) and Contract L–368 (1932 Deed).[3] Complaint at 6. In Count II of its Complaint, the Commission seeks to enjoin Seneca from engaging in any conduct that would unreasonably interfere with the Property.

 Seneca filed preliminary objections to the Commission's Complaint, seeking that the Complaint be dismissed because the claims therein: (1) are non-justiciable, and (2) fail to state a claim

---

2. The Commission states in its brief that "Sancrik is the common Grantor of both Commission and [Seneca]. Seneca's ... rights regarding the oil and gas estate included in or under Contracts L–81 and L–368 derive from [the] conveyance from Sancrik to United Natural Gas" under the 1929 Deed, since "[i]t is believed ... that United Natural Gas merged with Seneca." Commission Br. at 2. Seneca acknowledges that it acquired its oil and gas rights pursuant to the 1929 Deed from Sancrik to United Natural Gas. Seneca Br. at 2, 6.

3. At oral argument, the **Commission** stated that the 1928 and 1929 Deeds involve the same property, but since the 1928 Deed was the initial conveyance, it controls. Hence, the focus of the Commission's claims are on the 1928 and 1932 Deeds.

upon which relief may be granted.[4] This Court's review of preliminary objections is limited to the pleadings. *Pennsylvania State Lodge, Fraternal Order of Police v. Dep't of Conservation & Natural Res.*, 909 A.2d 413 (Pa.Cmwlth.2006), *aff'd*, 592 Pa. 304, 924 A.2d 1203 (2007).

> [This Court is] required to accept as true the well-pled averments set forth in the complaint, and all inferences reasonably deducible therefrom. Moreover, the [C]ourt need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.

*Id.* at 415–16 (citations omitted).

■ Seneca first argues that the Commission's claims are not justiciable because the Commission merely alleges that Seneca "plans on" drilling wells to extract oil and gas from the Property. Complaint at ¶ 12. Seneca maintains that although it has obtained a permit for a well, the permitted well is not located on the Property, but rather adjacent thereto, which will allow Seneca access to its oil and gas interests by drilling under the Property. Thus, Seneca asserts there is no present case or controversy for this Court to decide. We disagree.

■ Section 7541 of the Declaratory Judgments Act states that "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S. § 7541.

While we are mindful that the [Declaratory Judgments] Act specifically provides that its terms are to be liberally construed and administered, ... we have consistently held that there are certain limitations upon our ability to render declaratory judgments.

One such limitation is that the claim before us be justiciable.... [W]e defined that concept as the requirement that a petitioner's interest be a direct, substantial and present interest, as contrasted with a remote or speculative interest. Declaratory judgment is not appropriate in cases where we are asked to determine rights in anticipation of events which may never occur.... The general rule requires the presence of an actual controversy.

*Allegheny Cnty. Constables Ass'n, Inc. v. O'Malley*, 108 Pa.Cmwlth. 1, 528 A.2d 716, 718 (1987) (citations and quotation marks omitted). "An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties." *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 80 (Pa. Cmwlth.2010). "[T]he subject matter of the dispute giving rise to a request for declaratory relief need not have erupted into a full-fledged battle...." *Ronald H. Clark, Inc. v. Twp. of Hamilton*, 128 Pa. Cmwlth. 31, 562 A.2d 965, 968 (1989).

■ [O]ur Supreme Court has said:

> 'If differences between the parties concerned, as to their legal rights, have reached the state of antagonistic claims, which are being actively pressed on one side and opposed on the other, an actual controversy appears; where, however,

---

4. The Commission filed preliminary objections to Seneca's preliminary objections which this Court overruled on May 15, 2013.

The Commission also filed an application to amend its Complaint which this Court denied on August 14, 2013.

the claims of the several parties in interest, while not having reached the active stage, are nevertheless present, and indicative of threatened litigation in the immediate future, which seems unavoidable, the ripening seeds of a controversy appear.'

*Mid–Centre Cnty. Auth. v. Boggs Twp.*, 34 Pa.Cmwlth. 494, 384 A.2d 1008, 1011 (1978) (quoting *Lakeland Joint Sch. Dist. Auth. v. Scott Twp. Sch. Dist.*, 414 Pa. 451, 456–57, 200 A.2d 748, 751 (1964)). "Granting or denying a petition for a declaratory judgment is committed to the sound discretion of a court of original jurisdiction." *GTECH Corp. v. Dep't of Revenue*, 965 A.2d 1276, 1285 (Pa.Cmwlth.2009).

Here, while it is true that Seneca has not yet begun drilling operations, and could decide never to drill, Seneca has admitted that it holds a well permit for property located adjacent to Contract L–81 for the purpose of extracting oil and gas from under the Property. *See* Seneca's Prelim. Obj. at ¶ 6. In addition, Seneca "has drilled a vertical test well targeting unconventional shale gas formations on [Contract] L–81." Complaint at ¶ 11. Moreover, Seneca need afford the Commission only 60 days advance notice before drilling for oil or gas under the Property and has abated any action pending determination of the parties' rights. Seneca clearly has tools in place threatening imminent invasion of the Commission's purported rights, thereby creating an actual controversy. The declaration sought will practically help to end the controversy. Liberally construing and administering the Declaratory Judgments Act, as we must, this Court holds that the claims set forth in the Commission's Complaint are justiciable. Accordingly, we overrule Seneca's objection that the Commission's claims are not justiciable.

■■■■ Seneca next argues that the Commission's Complaint fails to state a cause of action upon which relief may be granted. We agree, in part. "[P]reliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings. Thus, no testimony or other evidence outside the complaint may be considered to dispose of the legal issues presented by a demurrer." *Cardella v. Pub. Sch. Emp. Ret. Bd.*, 827 A.2d 1277, 1282 (Pa.Cmwlth.2003).

The Commission's Complaint avers that "[the Commission] is the owner of certain modern oil/gas development rights, and in particular those associated with extracting gas using the horizontal drilling method and the hydrofracturing process, as well as the oil and gas that can only be economically extracted using those methods." Complaint at ¶ 26. At oral argument, the Commission conceded that Seneca at all times retained all the oil and gas rights underlying the Property, but continued to maintain that the Commission owns the development rights to extract the oil and gas by modern means. Consequently, the Commission asserts, in order for Seneca to get the oil and gas it must compensate the Commission to extract the same.

The Complaint asks this Court

> to issue an[ ] order against [Seneca] that it has no ownership interest in the aforesaid rights in and under Contracts L–81 [1928 Deed] and L–368 [1932 Deed]; and to declare that [the Commission] has ownership of the oil, gas and development rights associated with extracting gas using the horizontal drilling method and hydrofracturing process, future methods of oil and gas production and such other relief as may be deemed just.

Complaint at 6. Specifically, the Commission contends in its Complaint that the Deeds intended for Sancrik's successor, Seneca, to retain ownership of the oil and

gas under the Property, but only to the extent that the oil and gas can be extracted by methods in use at the time of the conveyances in 1928 and 1932.[5] The Complaint claims that since the use of modern, unconventional extraction methods were not known at that time and therefore could not have been intended, the Commission holds the development rights to extract the oil and gas in that manner. However, even accepting as true all of the Commission's well-pled material allegations, and drawing all inferences in the Commission's favor, as we must, the law will not permit this Court to declare that the Commission "has ownership of the oil and gas ... rights ..." underlying the Property. Complaint at 6.

■■■■■ "Pennsylvania law recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support." *BET Lehigh Real Estate, LLC v. Schuylkill Cnty. Bd. of Assessment Appeals,* 67 A.3d 845, 858 (Pa.Cmwlth.2013).

> Because these estates are severable, different owners may hold title to separate and distinct estates in the same land.... [T]he Pennsylvania rule permitting severance of the mineral estate for coal and other solid minerals applies with equal force to oil and gas. As with any estate in land, the owner of the mineral estate may convey his entire bundle of rights in fee or may grant a mere portion thereof via leasehold.

*Hetrick v. Apollo Gas Co.,* 415 Pa.Super. 189, 608 A.2d 1074, 1077–78 (1992) (citations omitted). Moreover,

> [w]hen construing a deed, a court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used.

*Consolidation Coal Co. v. White,* 875 A.2d 318, 326 (Pa.Super.2005) (citations omitted).

The subject Deeds were attached to and incorporated by reference in the Commission's Complaint. The 1928 Deed clearly excepted and reserved "all the oil and gas in or under the herein[-]described lands...." Complaint at ¶ 4 and Ex. A at 9. The Complaint also reflects that the 1929 Deed granted to Seneca's predecessor, United Natural Gas, "all the petroleum oil and natural gas in and under or which may be produced from the following described tracts of land...." Complaint Ex. C at 1. And, the Complaint admits that the 1932 Deed excepted and reserved "all petroleum oil and natural gas...." Complaint at ¶ 6 and Ex. B at 5. Thus, despite that the Complaint clearly avers that the Commission owns the development rights,

---

**5.** The Pennsylvania Superior Court recently held:

> [W]e do not find hydrofracking to be a new and novel method for the recovery of natural gas. Hydraulic fracturing of the strata to stimulate recovery of natural gas has been utilized in the drilling industry for many years. As noted by our Supreme Court in *United States Steel Corporation v.*

*Hoge,* 503 Pa. 140, 468 A.2d 1380 (1983), the use of hydrofracking to stimulate gas recovery was developed by the drilling industry in the late 1940[ ]s.

*Humberston v. Chevron U.S.A., Inc.,* 75 A.3d 504, 511 (Pa.Super.2013). Thus, although hydrofracking technology may not be a new or modern method, it was not developed at the time the Deeds were executed.

"as well as the oil and gas" extracted by modern methods, there is nothing in any of the Deeds that allows the oil and gas rights to revert to the Commission under any circumstances.[6] Complaint at ¶ 26. Accordingly, to the extent the Complaint seeks a declaration that the Commission has any right to the oil and gas under the Property, it fails to state a cause of action upon which relief may be granted, and Seneca's objection is sustained.

 The question remains, however, whether Seneca's extraction of its oil and gas underlying the Property is limited to technology existing at the time the Deeds were executed.

> [T]he law of this Commonwealth is that one who has the right to remove subsurface minerals, also has the right to enter onto the surface and to make reasonable use of a portion of the surface to retrieve his property. [*Belden & Blake Corp. v. Dep't of Conservation & Natural Res.* [DCNR], 600 Pa. 559, 567, 969 A.2d 528, 532–33 (2009).] In *Belden [&] Blake,* the Pennsylvania Supreme Court held that the case in *Chartiers Block Coal [Co.] v. Mellon,* 152 Pa. 286, 25 A. 597 (1893)[,] remains the seminal case setting forth a subsurface owner's rights with respect to the surface owner's rights. [*Belden & Blake,* 600 Pa. at 566], 969 A.2d [at] 532[ ]n. 6. In *Chartiers,* the court held that:

> > As against the owner of the surface, each of the several purchasers [of subsurface rights] would have the right, without any express words of grant for that purpose, to go upon the surface to open a way by shaft, or drift, or well, to his underlying estate, and to occupy so much of the surface,

> > beyond the limits of his shaft, drift, or well, as may be necessary to operate his estate, and to remove the product thereof.

> [*Chartiers,* 152 Pa. at 296], 25 A. at 598.

> The Supreme Court has also held that it is a general rule of law that, when anything is granted, all the means of attaining it and all the fruits and effects of it are also granted; when uncontrolled by express words of restriction all the powers pass which the law considers to be incident to the grant for the full and necessary enjoyment of it. *Oberly v. H.C. Frick Coke [Co.],* 262 Pa. 83, 104 A. 864 (1918). Consequently, a grant or a reservation of mines gives the right to work them, to enter and to mine, unless the language of the grant itself provides otherwise or repels this construction.

> The bare right to work carries with it the right to use so much of the surface as is reasonably necessary. *Id.* The mine owner has the right to enter and take and hold possession even as against the owner of the soil, and to use the surface so far as may be necessary to carry on the work of mining, even to the exclusion of the owner of the soil. *Id.*

*Humberston v. Chevron U.S.A., Inc.,* 75 A.3d 504, 511 (Pa.Super.2013).

 Moreover,

> [a] subsurface owner's rights cannot be diminished because the surface comes to be owned by the government, or any party with statutory obligations, regardless of their salutary nature. A 'regular' surface owner cannot unilaterally impose extra conditions on the subsurface owner beyond those that are reasonable. DCNR may wish to do so because of its

---

**6.** Although the 1928 Deed expressly reserved that coal, fireclay and limestone mining rights would expire after 35 years, timber removal rights would expire after 5 years, and surface coal railroad rights would expire when the coal operation was completed, there is no similar language used that would revert oil and gas rights to any party.

statutory duties, but its mandate does not allow it to do so unilaterally, nor does it shift the burden of seeking redress to the subsurface owner. That is, whatever its admirable obligations to the public, as concerns the owner of private property, the government and its agencies must be held to the same standard as any other surface owner. DCNR may *seek* additional conditions because of its mandate, but it has no authority to *impose* them unilaterally without compensation.

*Belden & Blake,* 600 Pa. at 567, 969 A.2d at 532–33.

■ Finally,

Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it.... To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Consolidation Coal Co.,* 875 A.2d at 326–27 (citations omitted).

Here, "[t]he Commission has requested this Honorable Court to issue an order that the express limitations and restrictions set forth in the deeds referenced above [i.e., 1928 and 1932 Deeds] as to the manner of exercising the rights to produce and operate for oil and gas...." Commission Br. at 2. According to the Commission's Complaint, the 1928 Deed clearly excepted and reserved the oil and gas "with the right to operate for same by ordinary means now in use." Complaint Ex. A at 9. The Commission claims that Seneca's extraction methods are limited to those "in use" in 1928 when the Deed was executed. The 1932 Deed did not similarly limit the oil and gas removal method under the land conveyed therein. The Commission contends that although the 1932 Deed did except and reserve the underlying oil and gas *and* the right to drill for and remove the same, since the 1932 Deed did not "contain words such as 'stimulate,' 'rework,' 'deviate,' 'hydrofrack,' 'laterally drill,' or 'horizontally drill[,]' " those rights passed to the Commission. *See* Commission Br. at 7. Seneca avers that interpreting the Deeds in that manner would lead to an absurd result, making its oil and gas rights meaningless.

■ Initially, we conclude that, unlike the 1928 Deed, the 1932 Deed did not limit removal of oil and gas to "ordinary methods now in use." Complaint Ex. A at 9, Ex. C at 8. Rather, the 1932 Deed generally permitted "prospect[ing] for, drill[ing] and bor[ing] for, produc[ing] and remov[ing] the same." Complaint Ex. B at 5. Because the language is unrestricted, it unambiguously grants Seneca "all the means of attaining" the oil and gas subject to the 1932 Deed. *Humberston,* 75 A.3d at 511. Thus, there is no question that Seneca may extract its oil and gas underlying the land conveyed in the 1932 Deed by horizontal drilling and hydrofracturing or by any other generally-accepted means, while respecting the Commission's surface estate as the law requires. Accordingly, we hold that the Complaint fails to state a cause of action upon which relief may be granted in the Commission's favor as to the 1932 Deed, and Seneca's objection is sustained.

■ We further conclude that the extraction methods language contained in the 1928 Deed is ambiguous. This Court could interpret the 1928 Deed as intending that extraction methods used before the Deed was executed (such as blasting) were no longer permitted, and that Seneca may

extract its oil and gas as modern technology allows; or, as the Commission contends, that Seneca is precluded from using the more modern extraction processes. Even accepting as true all of the Commission's well-pled material allegations, and drawing all inferences in the Commission's favor, this Court cannot declare, as the Commission requests, that "the [Commission], has ownership of the ... development rights associated with extracting gas using the horizontal drilling method and hydrofracking process, future methods of oil and gas production and such other relief as may be deemed just," Complaint at 6, because it is uncertain whether the Commission owns the alleged development rights and, therefore, entitled as a matter of law to the same. Accordingly, we cannot hold that the Complaint fails to state a cause of action upon which relief may be granted and, thus, Seneca's objection is overruled. We therefore direct Seneca to file an answer to Count I of the Commission's Complaint within 20 days of this Court's order, after which a status conference will be scheduled to permit the parties to engage in discovery in preparation for further proceedings, including the filing of dispositive motions, if appropriate.

■■■■■ Count II of the Commission's Complaint seeks a "permanent injunction that prevents [Seneca] from developing the oil and gas in any way that conflicts with the express rights of the aforesaid severance." [7] Complaint at 10. "The party seeking the injunction must establish that (1) the right to relief is clear, (2) there is an urgent necessity to avoid an injury which cannot be compensated for by damages, **and** (3) greater injury will result in refusing rather than granting the relief

requested." *Big Bass Lake Cmty. Ass'n v. Warren,* 23 A.3d 619, 626 (Pa.Cmwlth. 2011) (emphasis added). Each of the above requirements must be satisfied before an injunction will be ordered. *Id.*

The Commission cannot establish a clear right to the oil and gas underlying the Property or the development thereof. The oil and gas underlying the Property belongs to Seneca under all circumstances, and whether the Commission has any development rights is uncertain. The law already limits Seneca from developing the oil and gas in a way that conflicts with the severances; therefore, a permanent injunction is not necessary for that purpose. Because the Commission cannot establish a clear right to relief, not all of the requirements for a permanent injunction can be met. Thus, Seneca's objection that Count II of the Commission's Complaint fails to state a cause of action upon which relief may be granted is sustained.

For all of the above reasons, we overrule Seneca's objection that the Commission's claims are not justiciable. As to Count I of the Commission's Complaint, we sustain Seneca's objections that Count I of the Commission's Complaint fails to state a viable basis on which this Court may declare that the Commission has a right to the oil and gas under the Property, and that the Complaint fails to state a claim for a declaration that Seneca's method of extracting the oil and gas conveyed by the 1932 Deed is limited thereby. We overrule Seneca's objection that Count I of the Commission's Complaint fails to state a claim for a declaration that Seneca's extraction of the oil and gas underlying the Property is limited by the 1928 Deed. Finally, we sustain Seneca's objection that

---

7. The Commission's Complaint requests "[a] preliminary and thereafter permanent injunction...." Complaint at 10. However, by July 3, 2013 order, this Court continued the motion for a preliminary injunction subject to the parties' agreement. Thus, only the request for a permanent injunction remains for this Court to decide.

Count II of the Commission's Complaint fails to state a cause of action for injunctive relief. Because Seneca at all times retains the rights to the oil and gas underlying the Property, this litigation will proceed on the limited issue of whether the 1928 Deed restricts Seneca's extraction methods.

*ORDER*

AND NOW, this 27th day of January, 2014, Seneca Resources Corporation's (Seneca) preliminary objection that the claims in the Commonwealth of Pennsylvania, Pennsylvania Game Commission's (Commission) Complaint are not justiciable is overruled. Seneca's preliminary objection that the Commission's Complaint fails to state a cause of action upon which relief may be granted is sustained in part and overruled in part. Accordingly, Seneca is directed to file an answer to Count I of the Commission's Complaint within 20 days of this Court's order.