J-A09002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL C. ANDERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| TAMMY D. BRAWAND AND TERRY J. BRAWAND IN THEIR CAPACITIES AS EXECUTRICES OF THE ESTATE OF WILLIAM H. BRAWAND | : | No. 950 WDA 2024 |
| Appellants | : | |
| v. | : | |
| COUNTY OF ELK | : | |

Appeal from the Order Dated July 12, 2024
In the Court of Common Pleas of Elk County Civil Division at No(s):
2024-205

BEFORE:  KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED: June 10, 2025**

Tammy Brawand and Terry Brawand, in their capacity as executrices of the Estate of William Brawand, appeal from the order granting a preliminary injunction against them and in favor of Michael Anderson.  The Brawand Estate argues that the trial court abused its discretion by granting the preliminary injunction and by receiving expert testimony.  Because the record contains apparently reasonable grounds for the preliminary injunction and the trial court did not abuse its discretion in accepting the expert testimony, we affirm.

On April 5, 2024, Anderson filed a five-count complaint in ejectment against the Brawand Estate. He filed a petition for a preliminary injunction the same day. The County of Elk, Pennsylvania, petitioned to intervene on April 17, 2024; the parties stipulated to the intervention. The Brawand Estate filed preliminary objections to the complaint and an answer to the preliminary injunction petition on April 29, 2024. The trial court heard the preliminary injunction matter on July 11 and 12, 2024.

We recount only the facts necessary to resolve the issues on appeal. Anderson owns the surface of approximately 100 to 106 acres of land in Elk County. The Brawand Estate owns a tract immediately to the west.

Anderson's predecessor provided a subsurface oil and gas lease to the Brawand Estate's predecessor. The Brawand Estate now claims it has assumed the oil and gas lease below Anderson's land, and it operates three wells there. The wells are accessible by a dirt or gravel road which, combined with Anderson's driveway, known as "Blackberry Lane," forms a large loop around Anderson's house. The Brawands refer to this gravel road as the "lease road."

In 2022, Anderson allowed Elk County to place a temporary emergency communications tower on Anderson's property. The county, through Centre Communications, placed the tower on a spot beside the gravel road. Witnesses testified that the tower facilitates communication between emergency responders in the mountainous terrain. To remain operational, the tower requires regular maintenance and service.

The current dispute between the parties arose when the Brawands placed three barriers around the road connecting their wells. One blocks the road proceeding counterclockwise (turning right from Blackberry Lane), while the second and third are on either side of the tower proceeding clockwise (turning left). The second barrier ("G-2") is a locked gate, which prevents vehicular traffic, but not foot traffic, from reaching the tower. The Brawand Estate claims the barriers are necessary because it is concerned that interference by trespassers could damage their wells, lines, and roads. The Brawands observed that Anderson allows off-road vehicles on his property.

Anderson filed this action seeking, in part, removal of the barriers. At the hearing on the preliminary injunction, Anderson presented testimony from Samuel Harvey, whose education and experience are in the field of "conventional shallow" oil and gas operations. Over the objection of the Brawand Estate, Harvey was qualified as an expert and opined that the gates were not necessary for operating oil and gas wells. Regarding the potential harm to the Brawand Estate if the barriers were removed, Harvey assessed the value of the three wells on Anderson's property as less than $10,000.00.

In addition to their dispute about the barriers and the tower, the parties dispute ownership of a piece of land that surveyor Todd Hendricks labeled the "zone of encroachment." This zone includes part of Rasselas Road, which provides the only access to Blackberry Lane. Because the mail truck was turning around in this zone, the Brawands asked that the postal service not deliver mail to Anderson's mailbox along Rasselas Road. Anderson agreed

with the postmaster to temporarily receive his mail at the post office eight miles away. The Brawands removed three of Anderson's signs, including a "162 Blackberry Road" sign. In this lawsuit, Anderson seeks to restore the signs and access to his mailbox. He testified that an injunction is necessary because the location of his house would not be obvious in an emergency.

After the hearing, the trial court granted Anderson's motion for a preliminary injunction against the Brawand Estate. It entered a four-part order, essentially removing the gate leading to the tower, restoring access to Anderson's mailbox, allowing the signage, and requiring Anderson to post a bond. Specifically, the order provides:

1. That the defendant is barred from placing a gate or locking a gate leading to the temporary radio tower, described in testimony as, "G-2", or otherwise preventing access by landowner Michael Anderson, the County of Elk, Centre Communications or their subcontractors to the location of the communications tower for both operation of the tower or maintenance of the tower.

2. That the defendant is barred from interfering with the United States Postal Service's delivery and receipt of mail by landowner Michael Anderson at the existing mailbox or any other mailbox placed in the same location along Rasselas Road.

3. That the defendants are barred from removing or interfering with the posting of a sign, not to exceed three square feet in surface area, indicating the address of the Anderson tract as "162 Blackberry Lane" along Rasselas Road.

4. Plaintiff shall be required to post a bond with the Court in the amount of $2000 to protect against any damage to the road surface or gas lines.

Order, 7/16/24, at 1.

The Brawand Estate timely appealed. The Brawand Estate and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[1]

The Brawand Estate presents two questions for review:

1. Did the trial court abuse its discretion in granting Anderson's Petition for Temporary Injunction due to the fact that evidence presented by Anderson failed to satisfy one or more of the six legal elements necessary for the entry of a preliminary injunction, including, but not limited to: (1) establishing the injunction was necessary to prevent an irreparable harm that could not be compensated adequately by damages; (2) greater injury would result from refusing the injunction than granting it, and the issuance of an injunction would not substantially harm other interested parties; and (3) Anderson had a clear right to relief and was likely to prevail on the merits at trial?

2. Did the trial court abuse its discretion in allowing expert testimony and expert reports into the record over the timely objections of the Brawands' counsel to said expert's qualifications and subsequently relying on said expert opinions and reports in granting Anderson's Petition?

*See* The Brawand Estate's Brief at 4.

### Preliminary Injunction – Tower Access

In their first issue, the Brawand Estate argues the trial court abused its discretion by granting the preliminary injunction. They challenge the trial court's determination that Anderson met five of the six prerequisites to warrant preliminary relief with respect to the gate on the road to the tower.

Appellate review of a preliminary injunction is "highly deferential" to the trial court. ***CKHS, Inc. v. Prospect Med. Holdings, Inc.***, 329 A.3d 1204,

---

[1] Preliminarily, we note that we have jurisdiction to address these claims, as an appeal may be taken as of right from an order granting an injunction. Pa.R.A.P. 311(a)(4).

1211–12 (Pa. 2025) (citing *Hicks v. Am. Nat. Gas Co.*, 57 A. 55, 55–56 (Pa. 1904)). In determining whether the trial court abused its discretion by granting or denying a preliminary injunction, we "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Porter v. Chevron Appalachia, LLC*, 204 A.3d 411, 416 (Pa. Super. 2019) (citing *Warehime v. Warehime*, 860 A.2d 41, 61 (Pa. 2004)). Our scope of review is plenary. *Id.*

Pennsylvania law requires six "essential prerequisites" for a trial court to grant a preliminary injunction. *Summit Town Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003).

> First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Id.* (citations omitted).

We address each prerequisite in turn.

**1. An injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages.**

As a threshold, a party moving for a preliminary injunction must show "actual proof of irreparable harm." *CKHS, Inc.*, 328 A.3d at 1215 (quoting *New Castle Orthopedic Assocs. v. Burns*, 392 A.2d 1383, 1387 (Pa. 1978)). The harm must be immediate, *i.e.*, there must be a likelihood of an injury before a court can fully adjudicate the merits. *Panther Valley Television Co. v. Summit Hill*, 94 A.2d 735, 737 (Pa. 1953). Harm is irreparable if it "will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard." *CKHS, Inc.*, 328 A.3d at 1215

*CKHS, Inc.* is instructive. There, the plaintiffs sought to prevent the defendants from transitioning a hospital from an emergency and acute care hospital into a behavioral health facility. *Id.* at 1207–08. At a hearing on the plaintiff's petition for preliminary injunctive relief, the county public health director testified that in her experience, the removal of a health care access point from a community almost always negatively impacts its health outcomes. *Id.* at 1208. However, she admitted she did not conduct studies, collect data, or obtain a copy of the defendants' transition plan. *Id.* at 1209.

The trial court granted a preliminary injunction, but the Commonwealth Court reversed. *Id.* at 1209–11. Our sister court reasoned that the plaintiffs failed to introduce "concrete evidence" of irreparable harm beyond mere "speculation and hypothesis." *Id.* at 1210.

The Supreme Court of Pennsylvania reversed the Commonwealth Court's order. Noting the "highly deferential" standard of review, the high

court disavowed a "concrete evidence" requirement. *Id.* at 1215–20. Rather, an appellate court must affirm a preliminary injunction if any apparently reasonable grounds support the trial court's findings. The public health director's opinion provided such a basis. *Id.* at 1216.

Here, the trial court reasoned that the tower contributes to the health and safety of the residents and emergency responders in the area, particularly in Jones Township, but the locked gate prevented important maintenance as needed.

> The testimony of Mr. Thor Lehman, of the Wilcox Volunteer Fire Company, established without question that the fire and ambulance services to the residents of the Jones Township area is directly and adversely impacted by the loss or unavailability of the subject tower. It is essential to the safety of the responders and to the availability of essential services to the rural residents, including, candidly, the [Brawands], who reside in Jones Township. Without the functioning radio tower, as established by Lehman, there are vast areas of Jones Township where vital communications would be lost.
>
> The testimony of Karl Hosterman and Michael McAllister established that this sophisticated, modern equipment requires regular maintenance and service to ensure its continued operation. That service requires vehicle access to the site for maintenance equipment and parts. Workers cannot simply walk into the site.
>
> The locked gate prevents this vital access and threatens the health and safety of the selfless volunteers, but also the rural residents in need of emergency services.

Trial Court Opinion, 10/7/24, at 2.

The testimony the trial court referenced provided apparently reasonable grounds to determine that a preliminary injunction was needed to prevent the loss of the tower from lack of maintenance or emergency access. The harm

was (and is) immediate because the tower could have problems before the trial court reaches a full adjudication of the merits. The harm was irreparable because any damage from the failure of the tower could be estimated only by conjecture. As in **CKHS, Inc.**, the witnesses' opinions on the potential for a risk to public safety were an apparently reasonable basis for the trial court's finding as to the first prerequisite for a preliminary injunction.

**2. Greater injury would result from refusing an injunction than from granting it, and an injunction will not substantially harm other interested parties in the proceedings.**

The second prerequisite for a preliminary injunction requires the trial court to "weigh[] and balance[] the rights" of the parties against the injury that they could suffer due to injunctive relief. **Ambrogi v. Reber**, 932 A.2d 969, 977–78 (Pa. Super. 2007).

Here, the Brawand estate argues that trespassers going past the gate would harm the pipelines and infrastructure necessary to heat the Brawands' homes, whereas the only harm in keeping the gate locked is speculative.

We find that the trial court had an apparently reasonable basis to weigh the relative harm in favor of Anderson. The articulated harm of a tower failure caused by lack of access covers a broad group of responders and residents of Jones Township. Conversely, the potential harm to the Brawand Estate if the unlocked gate causes others to interfere with oil and gas equipment can be measured against the bond the trial court required from Anderson. Notably, the preliminary injunction does not require the Brawands to open the other

gates on the property; the distance between the gates labeled as G-2 and G-3 covers a relatively short portion of the road.

### 3. A preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct.

"The *status quo* to be maintained by a preliminary injunction is the legal status that preceded the pending controversy." **PennEnergy Res., LLC v. MDS Energy Development, LLC**, 325 A.3d 756, 771 (Pa. Super. 2024) (quoting **The York Group, Inc. v. Yorktowne Caskets, Inc.**, 924 A.2d 1234, 1244 (Pa. Super. 2007)).

The Brawand Estate argues that the true "wrongful" conduct was not their locking the gate but rather Anderson's unilaterally allowing Elk County to install the tower. For purposes of the preliminary injunction analysis, however, it was reasonable for the trial court to maintain the relative status of the parties to before the Brawands prevented Elk County or anyone else from accessing the portion of Anderson's surface property by vehicle.

### 4. Anderson is likely to prevail on the merits.

The Brawand Estate argues that Anderson is not likely to prevail on his ejectment action, as his ownership is limited to the surface. The oil and gas lease is the dominant estate; as a practical matter, the subsurface owner must "go upon the surface" to access the lower strata. **Belden & Blake Corp. v. Commonwealth, Dep't of Conservation & Nat. Res.**, 969 A.2d 528, 563 (Pa. 2009) (ultimately quoting **Chartiers Block Coal Co. v. Mellon**, 25 A. 597, 598 (Pa. 1893)). The Brawand Estate contends that it has the right to

"use the surface so far as may be necessary to carry on the work of [extracting oil and gas], even to the exclusion of the owner of the soil." *Commonwealth, Pa. Game Comm'n v. Seneca Res. Corp.*, 84 A.3d 1098, 1106 (Pa. Cmwlth. 2014) (quoting *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 511 (Pa. Super. 2013)). They reason that the language of the oil and gas lease at issue provides the right to control the "lease roads" and therefore to exclude Anderson. Finally, the Brawands argue that Anderson cannot challenge their claim to the lease because he has no interest in the subsurface ownership.

We conclude that the trial court had apparently reasonable grounds to find that Anderson would likely prevail on the merits. The rights of subsurface owners are "to be exercised with due regard to the owner of the surface." *Chartiers*, 25 A. at 598. Thus, an oil and gas lessee may not "choose locations for the drilling of wells in utter disregard of the rights of the landowner." *Gillespie v. Am. Zinc & Chem. Co.*, 93 A. 272, 274 (Pa. 1915). The original lease from Anderson's predecessor granted certain rights:

> the exclusive right of drilling and operating [on his tract], for and producing oil and gas, and all rights necessary, convenient and incident thereto; such in part as the right to construct and maintain buildings, telegraph, telephone and pipe lines leading from adjoining lands on and across this leasehold and other lands of the Lessor, *and similar rights for roadways* and the right to use water, oil and gas, from the premises for operating purposes . . . .
>
> First party waives all right to claim or hold any of the property or improvements placed or erected in or upon said land by the Lessee, as fixtures or as part of the realty . . . .

Brawand Estate's Exhibit 3, admitted July 11, 2024 (emphasis added).

It is not clear from the cases or the quoted language of the lease that the Brawand Estate enjoys the right to install a locked gate to effectively block all vehicular traffic past Anderson's driveway. While a subsurface owner may use the surface to exclude a surface owner, this right extends only "so far as may be necessary" to access the underground resources. *Seneca Res.*, 84 A.3d at 1106. Here, Samuel Harvey opined that the gates installed around the tower had no function regarding oil and gas surface operations. Gate G-2 specifically "certainly doesn't" protect any oil and gas operations. N.T., 7/11/24, at 62. This is an apparently reasonable basis for the trial court to find, for purposes of the preliminary injunction, that Anderson is likely to succeed on the merits. Finally, regarding standing, a surface owner "has a right to demand proof of authority to enter upon his property." *August Petroleum Co. 77B v. Casciola*, 449 A.2d 735, 739 (Pa. Super. 1982).

### 5. The injunction is reasonably suited to abate the offending activity.

The Brawand Estate argues that requiring the gate to remain unlocked exceeds what is necessary to allow access to the tower. Terry Brawand testified to the estate's willingness to provide a key to other interested parties.

The trial court had apparently reasonable grounds to determine the gate provision of its preliminary injunction was reasonably suited to abate the lack of access to the tower. Notably, the only gate the trial court ordered to remain unlocked was the gate labeled as G-2. It appears from the map prepared by Samuel Harvey that the only additional access from unlocking gate G-2 will

be to gate G-3—precisely the stretch of road necessary to go from Anderson's driveway to the tower. Furthermore, the injunction requires Anderson to post bond to protect against any potential harm to the Brawand Estate's interest in the road surface or gas lines. Thus, the injunction was reasonably tailored.

### 6. A preliminary injunction will not adversely affect the public interest.

The Brawand Estate does not contest the final prerequisite for a preliminary injunction. This is for good reason, as access to the tower helps facilitate emergency care. Because apparently reasonable grounds support the trial court's order that the gate remain unlocked, we affirm the first part of the preliminary injunction.

### Preliminary Injunction – Boundary Line

The Brawand Estate also challenges the second and third parts of the preliminary injunction, which prohibit interference with Anderson's mail service and address sign along Rasselas Road. They argue that Anderson failed to prove his ownership over the "zone of encroachment," the area claimed by both Anderson and the Brawand Estate. Specifically, the Brawand Estate cites the following exchange as evidence that Anderson's surveyor Todd Hendricks surveyed the property according to Anderson's preferred outcome rather than the deeded language:

> Q. Okay. Now Mr. Hendricks, you noted that you were measuring out an encroachment by the Brawands. What is the encroachment by the Brawands that you're referencing?
>
> A. Well, I was instructed by [Anderson's attorney] to show something on the map that we -- this is what we determined --

- 13 -

we weren't sure what they were claiming, so we indicated a portion of the property off the east end that we felt might indicate what they were claiming or encroaching upon.

N.T., 7/11/24, at 35–36. The Brawand Estate observes that the "zone of encroachment" would result in Anderson's tract covering approximately 106 acres rather than the 100 acres indicated in the prior deeds of record.

We find that Todd Hendricks' survey provided apparently reasonable grounds for the trial court to determine that Anderson owns the surface of the "zone of encroachment." The quoted testimony above reflects that Hendricks' uncertainty was about the claim of the Brawand Estate, not of Anderson. As Hendricks testified, he found an original monument (iron pipe) at all four corners of the area he drew as Anderson's property. Furthermore, he noted that acreage is the least important consideration in identifying property lines. It was reasonable for the trial court to rely on Hendricks' testimony in granting the preliminary injunction as to the property dispute, and allowing the signage and access to the mailbox.[2]

In sum, apparently reasonable grounds support the trial court's conclusion that Anderson is entitled to a preliminary injunction regarding the

---

[2] Additionally, apparently reasonable grounds support the other prerequisites for a preliminary injunction. The deprivation of an interest in real property is an irreparable harm, as "each parcel of real estate is unique." **Fraport Pittsburgh, Inc. v. Allegheny Cnty. Airport Auth.**, 296 A.3d 9, 18 (Pa. Super. 2023) (citing **Peters v. Davis**, 231 A.2d 748, 752 (Pa. 1967)). Anderson testified that he has to make a 16-mile round trip to the post office rather than use his mailbox. He has concerns about the lack of his street address sign in an emergency. The injunction is appropriately tailored to preserve Anderson's ability to receive mail and emergency services pending a full resolution on the merits.

gate, the mailbox, and the signage. Therefore, the Brawand Estate's first claim fails.

**Expert Testimony**

Second, the Brawand Estate argues the trial court abused its discretion in accepting and relying on the testimony of Samuel Harvey, who provided an opinion that the gates were not relevant to operating oil and gas wells and who assessed the value of the three wells on Anderson's property as less than $10,000.00. The Brawand Estate asserts that Harvey's experience with *shallow* oil and gas wells did not provide him with specialized skill, training, or expertise in the security of *conventional* oil and gas wells. They also challenge Harvey's failure to cite industry standards or methodology in reaching his conclusions.

We review a trial court's evidentiary rulings, including the admission of expert testimony, for an abuse of discretion. *Talmadge v. Ervin*, 236 A.3d 1154, 1161 (Pa. Super. 2020) (citation omitted). Pennsylvania's standard for qualifying an expert witness is liberal: "whether the witness has *any* reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine." *Miller v. Brass Rail Tavern, Inc.*, 664 A.2d 525, 528 (Pa. 1995). A witness may thus be qualified as an expert if the witness' knowledge exceeds "the ordinary range of training, knowledge, intelligence or experience." *Wright v. Residence Inn by Marriott, Inc.*, 207 A.3d 970, 975–76 (Pa. Super. 2019); *see* Pa.R.E. 702.

Here, the trial court did not abuse its discretion by qualifying Harvey as an expert in "the operation and the placement and the protection and the security of existing oil and gas wells." N.T., 7/11/24, at 52. Harvey has two degrees in geosciences and decades of experience with "conventional shallow" oil and gas operations. Anderson's Exhibit E, admitted 7/11/24. As Harvey explained, this expertise concerns the type of wells located in northwestern Pennsylvania. N.T., 7/11/24, at 53. He visited the property and provided opinions based on that visit. We discern no abuse of discretion in the trial court accepting this expert testimony.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/10/2025