## Sigal, Appellant, *v*. Manufacturers Light and Heat Co.

Argued January 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Clyde W. Teel,* with him *Fackenthal, Teel & Stettz,* for appellant.

*Nathan L. Reibman,* with him *Joseph M. Reibman,* and *Reibman and Reibman,* for appellee.

OPINION BY MR. JUSTICE MANDERINO, January 19, 1973:

The appellant, Serena Nemer Sigal, is the owner of approximately 3.66 acres of land in Palmer Township, Northampton County. On November 12, 1947, the appellant, with her husband, executed an easement in favor of the appellee, The Manufacturers Light & Heat Co. The easement authorized the construction of a 14 inch pipeline along a line which had been surveyed prior to the grant of the easement. In accordance with the easement the appellee constructed the 14 inch pipeline. For approximately 23 years there were no problems between the parties concerning the easement and the 14 inch pipeline.

In 1970, the appellee notified the appellant of its intention to construct a new 20 inch pipeline across her land, parallel to the 14 inch pipeline at a distance approximately ten feet away from the 14 inch pipeline. The appellant gave notice to the appellee not to enter her property. Appellee informed the appellant it was

acting within the rights granted to it under the 1947 easement agreement and the appellee then began construction of the 20 inch pipeline across appellant's property.

Appellant filed a complaint in equity, and a preliminary injunction, halting construction, was granted against the appellee on October 29, 1970. On November 2, 1970, a hearing on the appellant's motion to continue the injunction was held. Both parties agreed that this hearing would also serve as a hearing on the permanent injunction. At the conclusion of the November 2, hearing, the chancellor dissolved the preliminary injunction and refused to grant a permanent injunction. Exceptions filed by the appellant before the court en banc were dismissed and this appeal followed.

Appellee has moved for a quashing of this appeal arguing that the controversy is moot because construction of the new 20 inch pipeline is complete. Construction was completed between November 2, 1970, the date the preliminary injunction was dissolved and April 5, 1971, the date the court en banc dismissed appellant's exceptions. Appellee claims that since the act to be restrained has been completed there is nothing for this court to decide. We disagree.

In this case the appellant averred that the construction of the new 20 inch pipeline would constitute a continuing trespass and an unlawful taking. The complaint requested not only injunctive relief, but also prayed for damages, punitive and otherwise, and also requested general relief. Equity had proper jurisdiction in this matter and may, under the prayer for general relief, validly frame any proper relief agreeable to the case pleaded and proven.

In *Hayden v. Hayden*, 354 Pa. 11, 13-14, 46 A. 2d 502 (1946), this Court stated that it is a well-established rule that an equity court ". . . having properly taken

jurisdiction, and finding the case ready for final adjudication, *equity will proceed under the prayer for further relief and complete the litigation. . . ."* (Emphasis supplied.)

In *Dombrowski v. Philadelphia,* 431 Pa. 199, 245 A. 2d 238 (1968), the City of Philadelphia contended that the prayer for general relief contained in the plaintiff's complaint did not give the court power to render relief beyond that prayed for in the specific request. In rejecting this contention our Court said, "[a]s early as 1868 this court recognized that under a general prayer for relief an equity court *may grant such relief as is 'agreeable' to the case pleaded and proven even though the relief granted differs from the specific relief prayed for."* (Emphasis supplied.)

In *Faden v. Philadelphia Housing Authority,* 424 Pa. 273, 227 A. 2d 619 (1967), the appellee alleged that since all the work to be performed under the contract had been completed, the controversy was now dissolved and since the act sought to be restrained had been performed, equity was precluded from granting the requested relief sought. This court, refusing to dismiss the appeal because the controlling question had become moot, stated, "More importantly, even assuming the correctness of appellee's averment that the work . . . has been completed, this does not moot this litigation. Appellant's prayer for relief in the court below did not seek only to restrain the defendant contractor from performing its duties under the contract, it also sought to restrain the defendant, Philadelphia Housing Authority, from performing its duties and, in addition, such other and further relief as may be deemed just and reasonable."

The appellee has relied on various cases to sustain its contention that a controversy is moot if the act to be enjoined has been completed. The cases cited by ap-

pellee are: *Allen v. Birmingham Township*, 430 Pa. 595, 244 A. 2d 661 (1968); *Strassburger v. Philadelphia Record Co.*, 335 Pa. 485, 6 A. 2d 922 (1939); *Werner v. King*, 310 Pa. 120, 164 A. 918 (1933); and *Frampton v. Pierce*, 251 Pa. 186, 96 A. 467 (1915). The appellee is correct that in the cited cases the act to be enjoined had been completed and equity did not give any relief. In all these cases, however, equity declined to act, not because the act sought to be enjoined had been completed, but because any relief, other than injunctive relief, would have been inappropriate. In none of the cases cited was there a continuing trespass or any other circumstances which required equitable relief in order to complete the litigation.

In this case the installation of the controversial pipeline did not moot the controversy and relief is necessary and appropriate to complete the litigation. The appellee's motion to quash is denied.

We now proceed to the merits of the controversy. The sole question is whether the easement granted by the appellant in 1947, giving the appellee the right to construct a 14 inch pipeline along a surveyed line across her land, also granted the appellee the right to construct a 20 inch pipeline ten feet west of the original 14 inch pipeline.

We hold that the appellee did not have the right to construct the 20 inch pipeline on the appellant's property. The easement which the appellee claims gave it the right to construct the 20 inch pipeline across the appellant's land was created by a standard form grant used by the appellee. Before the grant was signed by the appellant and her husband, certain parts of appellee's standard grant were crossed out by the appellant and her husband, who refused to sign the form grant as printed and presented to them. The crossing out was done by typing a series of lower case letter

"m's" over certain words in the standard form. The pertinent parts of the grant signed by the appellant and her husband with the indicated typed-over portions, reads: "For and in consideration of $1.00 . . . Arthur P. Sigal . . . and Serena Nemer Sigal . . . do hereby grant to the Manufacturers Light & Heat Co. . . . its successors and assigns, the right to lay a 14 inch pipe line, [first typed-over portion], and maintain, operate, repair and remove said lines along a line which has been surveyed for the same over and through our land . . . and said Company to pay any damages which may arise to crops and fences from the relaying, maintaining and operating said pipe line . . . [second typed-over portion]; also may change the size of its pipes, the damages, if any, to crops and surface in making such change to be paid by the company."

The first typed-over portion reads: "construct a telegraph and telephone line".

The second typed-over portion and the one that primarily concerns us reads: "And it is hereby further agreed, that said company, its successors and assigns, may at any time lay, maintain, operate, repair and remove a second line of pipe alongside of the first line as herein provided, upon payment of a like consideration and subject to the same conditions."

The same rules of construction that apply to contracts are applicable in the construction of easement grants. *Percy A. Brown & Co. v. Raub,* 357 Pa. 271, 54 A. 2d 35 (1947). When there is doubt concerning the meaning of a contract we have said: "In the construction of any contract, certain principles must guide us: (a) if there is any doubt as to the meaning of a term of a contract, such term should 'receive a reasonable construction *and one that will accord with the intention of the parties;* and, *in order to ascertain their intention, the court must look at the circumstances un-*

*der which the [contract] was made'*: . . .; (b) in construing a contract we seek to ascertain what the parties intended and, in so doing, *we consider the circumstances, the situation of the parties, the objects they have in mind and the nature of the subject matter of the contract*: . . . ." *United Refining Co. v. Jenkins,* 410 Pa. 126, 137-38, 189 A. 2d 574 (1963). (Emphasis supplied.)

We have applied the same principles in determining the meaning of an easement grant in *Merrill v. Manufacturers Light & Heat Co.,* 409 Pa. 68, 73, 185 A. 2d 573 (1962), where this court stated: "To ascertain the nature of the easement created by an express grant *we determine the intention of the parties* ascertained from the language of the instrument. Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed *with reference to the attending circumstances known to the parties at the time the grant was made*." (Emphasis supplied.)

On its face, the written instrument granting easement rights in this case is ambiguous. The same sentence which refers to the right to lay a 14 inch pipeline (singular) has a later reference to "said lines" (plural). The use of the plural "lines" makes no sense because the only previous reference has been to a "line" (singular). The writing is additionally ambiguous because other key words which are "also may change the size of its pipes" are dangling in that the possessive pronoun "its" before the word "pipes" does not have any subject preceding, to which the possessive pronoun refers. The dangling phrase is the beginning of a sentence, the first word of which does not begin with a capital letter as is customary in normal English usage. Immediately preceding the "sentence" which does not begin with a capital letter, there appears a dangling

semicolon which makes no sense at the beginning of a sentence and can hardly relate to the preceding sentence which is already properly punctuated by a closing period.

The above deviations from accepted grammatical usage make difficult, if not impossible, a clear understanding of the words used or the intention of the parties. This is particularly true concerning the meaning of a disputed phrase in the instrument which states that the grantee is to pay damages from ". . . the relaying, maintaining and operating said pipeline. . . ." The instrument is ambiguous as to what the words ". . . relaying . . . said pipeline . . ." were intended to mean.

To ascertain the intention of the parties in the present case particular reference must be made to the attending circumstances at the time the 1947 grant was signed. The attending circumstances were that when the appellant and her husband were presented a standard form grant by the appellee they refused to sign the appellee's standard form grant as printed and only signed the grant after the objectionable clauses were typed over.

There is no dispute as to the words which were typed over before the signing of the instrument. An examination of the typed-over portions explains the confusing appearance of singulars and plurals in the instrument as to "pipes" and "lines". This can be clearly seen by an examination of the instrument with the typed-over portions set out in brackets in capital letters as follows: "For and in consideration of $1.00 . . . Arthur P. Sigal . . . and Serena Nemer Sigal . . . do hereby grant to the Manufacturers Light & Heat Co. . . . its successors and assigns, the right to lay a 14 inch pipe line, [CONSTRUCT A TELEGRAPH AND TELEPHONE LINE], and maintain, operate, repair and remove said

lines along a line which has been surveyed for the same over and through our land . . ., and said company to pay any damages which may arise to crops and fences from the relaying, maintaining and operating said pipe line . . . [AND IT IS HEREBY FURTHER AGREED, THAT SAID COMPANY, ITS SUCCESSORS AND ASSIGNS, MAY AT ANY TIME LAY, MAINTAIN, OPERATE, REPAIR AND RE- MOVE A SECOND LINE OF PIPE ALONGSIDE THE FIRST LINE AS HEREIN PROVIDED, UPON PAYMENT OF A LIKE CON- SIDERATION AND SUBJECT TO THE SAME CONDITIONS] ; al- so may change the size of its pipes, the damages, if any, to crops and surface in making such change to be paid by the company."

It is clear when we consider the circumstances sur- rounding the signing of the instrument that the parties did not intend that a second pipeline would ever be constructed in addition to the 14 inch pipeline. That right is exactly what the appellee would have had if the second typed-over portion of the agreement had re- mained as part of the easement grant.

The appellee in effect argues that even though per- mission to lay a second pipeline alongside the first line was specifically typed over, the right to construct the new 20 inch line alongside the 14 inch line can be im- plied from the phrase in the instrument which states that the appellee is to pay damages from the ". . . re- laying . . . said pipe line. . . ." According to appellee, the construction of the new 20 inch pipeline was per- mitted because it was a "relaying" of the original pipe- line. We note, however, that in the instrument before the appearance of the phrase ". . . relaying . . . said pipe line . . ." there are two prior references to which "said pipe line" could refer. One of the prior refer- ences speaks of a "14 inch pipe line" laid "along a line which has been surveyed". The other previous refer- ence is to the confusing word "lines" (plural). The

ambiguity in the use of the plural "lines" becomes clear
when we note that it appears after the first typed-over
portion which reads "construct a telegraph and tele-
phone line". The phrase "relaying said pipe line . . ."
obviously was meant to refer back to the 14 inch pipe-
line along a line which had been surveyed.

We cannot read the phrase "relaying said pipe line"
as authorizing the second pipeline. Under such a con-
struction, the appellee, in effect, would have the same
rights under the grant with the deletions, as it would
have had under the grant without the deletions. To
say the 20 inch pipeline is not a "second" pipeline, but
rather a replacement for the 14 inch pipeline would
necessitate inserting back into the instrument the exact
intent which the parties eliminated by the second typed-
over portion of the original form grant. In addition
it would mean that, if in the future, the appellee wishes
to construct a larger pipeline across the appellant's
property it could do so 10 feet to the west of the 20
inch pipeline and could do so by claiming it was "re-
laying" the 20 inch pipeline.

The signed instrument in this case did not give the
appellee the right to construct a second pipeline along-
side the first pipeline. The circumstances surrounding
the signing of the instrument clearly indicate a contrary
intent. We cannot, therefore, imply such a right from
the authorization to relay the 14 inch pipeline. "Relay"
means to lay again, not to "lay another"; at least when
the circumstances are clear that the parties did not in-
tend the laying of another or second line.

We hold that the nature of the easement created by
the 1947 grant did not give the appellee the right to
construct, on the appellant's property, the present 20
inch pipeline and, therefore, such 20 inch pipeline con-
stitutes an unlawful invasion of the appellant's prop-
erty and a continuing trespass.

Decree vacated and the matter remanded for further proceedings in accordance with this opinion. Costs on the appellee.