## Bahls v. Northern Pipe Line Co.

*C. William Freed, Jr.,* for plaintiffs.
*Jay H. Karsch,* for defendants.

BECKERT, *P.J.,* March 27, 1979—On January 30, 1979, the undersigned dismissed plaintiffs' motion for summary judgment, and from that order plaintiffs have appealed to the Superior Court.

This action in ejectment was commenced by plaintiffs, seeking to gain exclusive possession of certain real estate as against defendants, which in turn claim to have certain rights to run pipelines across that realty, by virtue of a recorded right-of-way agreement dated March 1, 1951. (References to the parties will be deemed to refer, where appropriate, to their respective predecessors in interest.)

That agreement, in relevant part, provides as follows:

"FOR AND IN CONSIDERATION of the sum of five dollars to us duly paid . . . and the further consideration of three dollar per lineal rod of the route to be selected by the grantee to be paid when this grant shall be used or occupied but not later than two years after the date hereof, the undersigned [grantors] . . . hereby grant unto Northern Pipe Line Company, . . . its successors and assigns, a right of way through our lands . . . for the purpose of constructing, from time to time, and maintaining and operating, one or more lines of pipe for the transportation of petroleum, gas, or the products of either, with free ingress and egress to construct, operate, maintain, and from time to time, alter, repair or remove the same. Should said further consideration not be paid or tendered to the grantors within the time limit above mentioned, this grant shall thereafter become null and void.

"
. . .

"Should more than one line of pipe be laid under this grant, such additional line or lines shall be laid along the route of the last preceding line laid under this grant and not more than ten feet therefrom; and, in addition to the damages as above provided, the same consideration per lineal rod shall be paid for each line so laid."

In October 1975, plaintiffs and defendants became involved in a dispute over the nature and extent of that right-of-way, giving rise to this action. Plaintiffs take the position that defendants were required to install all of the pipelines which

they intended to install within two years after the date of the agreement, and that after that period of time had expired defendants would have had to negotiate a new right-of-way agreement or proceed under eminent domain in order to run more lines across plaintiffs' land.

Within two years after execution of the agreement defendant Northern Pipe Line Company installed a 16″ underground pipeline across the subject property and paid the required consideration for exercise of the right-of-way. No additional pipeline was laid until 1974, when Buckeye Pipeline Company commenced installation of a second pipeline, 20″ in diameter and located seven and one-half feet from the first pipeline installed by Northern. Buckeye paid to the then-owners of the premises additional roddage consideration for use and installation of the 20″ line and an additional sum to the next subsequent owners in full settlement for all damages caused by installation of that line. In their stipulation of facts the parties have agreed that the within plaintiffs, at the time they purchased the property, were not aware that those payments had been made, although they did know that two pipelines had been laid on the premises.

We found against plaintiffs on their motion for summary judgment solely on the basis of the construction which we believe must be given to the right-of-way agreement. Under the law an express grant of an easement or right-of-way must be construed in accordance with the ordinary and natural sense of the words used and in accordance with the parties' intention: Maranatha Settlement Association, Inc. v. Evans, 385 Pa. 208, 122 A. 2d 679

(1956); Merrill v. Manufacturers Light and Heat Company, 409 Pa. 68, 185 A. 2d 573 (1962). The parties to this action are all successors in interest to the parties who entered into the written agreement in 1951; none of them today has any actual knowledge of the subjective circumstances which existed back in that year, so that we are left to resolve this issue on the basis of the writing alone.

Plaintiffs first assert that on the face of the document it appears clear that no additional pipeline could have been laid by defendants unless defendants, within two years after execution of the grant, paid to plaintiffs the consideration required for installation of that additional pipeline. Defendants, on the other hand, contend that the agreement has granted to them the right to install additional pipelines at any time, provided that, 1) the *initial* consideration of three dollars per lineal rod for the first laying of pipe was paid within two years after execution of the grant; 2) a like consideration, plus damages, be paid for any additional pipeline or lines thereafter laid; and 3) no additional pipeline could be laid at a distance of more than ten feet from the last preceding line. In other words, defendants contend that the timely payment of the initial consideration (which in fact occurred) vested in them the right to a so-called "expansible easement." Such an easement has been recognized in this Commonwealth: Caruthers v. Peoples National Gas Company, 155 Pa. Superior Ct. 332, 38 A. 2d 713 (1944).

While we concede that the right-of-way agreement could have been more artfully drafted, we nevertheless concur with defendants' reading of it. Both of the references to "further consideration" in

the first paragraph are part of the statement of the manner in which the initial pipeline construction must be accomplished. The grant was to become void only if the payment for the first installation was not made in the amount and within the time designated therein. Once those requirements were satisfied (that is, when the condition subsequent was performed), however, defendants then became entitled to construct, "from time to time," an unlimited number of additional pipelines, without restriction as to the time of construction, so long as they would pay the required consideration and observe the restriction as to the spacing of those subsequent lines. The apparent purpose of the two years' restriction was to establish within that time the route which any pipelines erected, then or later, would have to follow.

We have not found a judicial interpretation of the phrase "from time to time" which has dealt with that term in a context similar to that in which it appears here. However, we believe the ordinary sense of that phrase to imply, as defendants suggest, that the happening of the event referred to might occur at any time or at intervals over an indefinite period of time. We find that phrase to be independent of the two years' time limitation which appears in the right-of-way agreement and believe that time restriction was applicable only to the time within which the initial consideration had to be tendered by the grantee.

Plaintiffs suggest that it could not have been the intentions of their predecessors in title to enter into such an open ended agreement, and they have engaged in considerable speculation as to the nature of the "attending circumstances that would have

been known to the parties at the time the grant was made." However, it is not appropriate for us to inquire into the wisdom of the bargain which was entered into, so long as it was not unlawful. Where there is no ambiguity, the agreement must stand on its own two feet.

The same rules of construction that apply to contracts are applicable to easement grants: Sigal v. Manufacturers Light and Heat Co., 450 Pa. 228, 299 A. 2d 646 (1973). Evidence of the intentions of the parties (as contrasted with what might *possibly* have been their intentions, which is what plaintiffs would have us consider) would constitute inadmissible parol evidence in view of our conclusion that the agreement was not ambiguous.

We therefore concluded that the written agreement could be interpreted in a reasonable, everyday sense, since it did not contain technical phraseology, and that it was unambiguous in its intent, even though the expression of that intent reflected dubious wisdom on the part of the grantors. The grantors' successors remain bound by that agreement, and it is significant to note that the within plaintiffs took title with knowledge that the property they were purchasing was encumbered by this right-of-way. Where a written contract is clear and unequivocal, its meaning must be determined by its contents alone: East Crossroads Center, Inc. v. Mellon-Stuart Company, 416 Pa. 229, 205 A. 2d 865 (1965); Bobali Corporation v. Tamapa Company, 235 Pa. Superior Ct. 1, 340 A. 2d 485 (1975).