J-S39013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PEOPLES NATURAL GAS COMPANY, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ALEXANDER A. CAMESI AND ANITA CAMESI, HUSBAND AND WIFE, | |
| Appellee | No. 1502 WDA 2016 |

Appeal from the Order Entered September 9, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):
GD-14-8143
GD-14-014662

BEFORE: BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 29, 2017**

Appellant, Peoples Natural Gas Company, LLC ("PNG"), appeals from the order entering judgment on September 9, 2016, in the Court of Common Pleas of Allegheny County, against PNG and in favor of Appellees, Alexander A. Camesi and Anita Camesi, husband and wife (collectively "Camesis"). After careful review, we affirm.

This case arises from a dispute over PNG's alleged easement over the Camesis' property to access its gas lines and additional equipment located on a parcel of land owned by PNG, adjacent to the Camesis' property. The

---

[*] Retired Senior Judge assigned to the Superior Court.

trial court summarized the relevant facts in its Pa.R.A.P. 1925(a) opinion, as follows:

> The facts of this case are rooted in a 1904 easement [(hereinafter "1904 Right of Way")] executed by D.M. and Vianna McCartney (collectively "McCartneys") to lay one 10-inch line of pipe, known as P670, along with the right of entry to that pipe. In the [1904 Right of Way], specific language pertaining to anything additional being built on the McCartneys' land at that time has been stricken. The 10-inch line[] was then built in or around 1909.
>
> In 1927, two more easements executed between the McCartneys gave access to the McCartneys' land to build both a second, 6-inch pipeline, and a facility for the two pipelines. The first, to build and maintain a 6-inch line for local customer distribution (3628, now M4611)[,] and the second for a regulating station (LS43) for both the existing 10-inch and new 6-inch pipelines. The new 6-inch line was to run along what is now Western Ave. The station was to be built where Western Ave. and the existing 10-inch pipeline intersected. The 1927 grants were amended to clarify that only the 6-inch line and regulating station were to be built on McCartney[s'] land.
>
> The first 1927 Right of Way Grant for the 6-inch customer distribution line [(hereinafter "1927 Right of Way I")] gave PNG the right of way to "lay, maintain, replace, operate and remove a pipeline… on, over and through… with ingress and egress to and from the same." The specific language to "lay additional lines of pipes… [and] change the size of its pipes" has been crossed out. The clear intent of this grant was for PNG to lay one pipeline in the direction of Western Ave., and to repair and maintain it as needed, but not to add additional pipes in the future, or even to change the size of the pipe. Ingress and egress was only granted over the McCartneys' land for building and maintenance of the 6-inch line.
>
> The second Right of Way Grant [(hereinafter "1927 Right of Way II")] was agreed upon by the McCartneys[] and PNG for the regulating station facility. The words used in the grant to PNG are very specific. They read:
>
>> D.M. McCartney and Vianna McCartney his wife do hereby grant unto Peoples Natural Gas Company … the right of

way or privilege *to construct, lay, maintain, operate, repair and remove a gas regulator* or regulators, meter or meters, heater or heaters, *and similar appliances, for the transportation, control and measurement of natural gas…*[.] *With ingress and egress over lands of grantors to and from the same.* It being understood that the appliances mentioned or intended are incident to that certain grant of pipeline privileges, made … 28th day of June, 1904.

(emphasis added).

The [1927 Right of Way II] then states that the regulation facility shall be built at the intersection of Western Ave. and "the right of way heretofore granted… for a high pressure gas line thought [*sic*] my lands." The facility was to be built on McCartney[s'] land, where the 10-inch and 6-inch lines intersect.

In reading the two 1927 Right of Way [g]rants, ingress and egress is very specific to accessing the regulating station, the 6-inch line, and the 10-inch line. No other facilities or pipelines were to be built on their land. Ingress and egress was limited to accessing the two pipelines and their regulation facility.

Sometime between the 1927 grants and 1960, the McCartneys' land was sold to the Wanners, who then sold a piece of land to PNG in May of 1960. Around the same time, PNG built two additional pipelines (7575, a 20-inch pipeline, and 7305, a 12-inch pipeline) for the purpose of interstate distribution of gas, thus requiring that PNG pig the lines, necessitating the installation of the pig launcher. All of this was built on the land owned by PNG. However, ingress and egress was still obtained though [*sic*] the Wanners' land, at the same location as granted for the 1904 and 1927 projects. No additional grant for accessing the 1960 lines and facility was ever recorded.

Over the years, PNG continued to access both the 1904 and 1927 lines, as well as the 1960 lines and facility via the same route over the Wanners' land. In 1978, the Wanners sold a piece of land to Mr. Camesi, who was aware of the Right of Way [g]rants from 1904 and 1927. In 1982, PNG abandoned the 1904 pipeline, making the 1904 grant irrelevant. In 1998, Mr. and Mrs. Camesi purchased the second parcel of land from the Wanners that bordered PNG's property where the 1960s line and facility was located, as well as the regulation facility and 6-

inch pipeline as per the 1927 grant. In 2010[,] a new regulator, XS335, was constructed to manage the gas flow between the two pipelines built in the 1960s, the 20-inch and 12-inch lines.

All of the work on the facilities to date has been done by way of the ingress and egress route that was initially granted for the 1904 and 1927 projects. Further permission to access PNG's property for additional structures was never expressly recorded.

Trial Court Opinion ("TCO"), 1/19/17, at 3-6 (unpaginated; reference to attachments omitted).

On May 6, 2014, the Camesis commenced an action against PNG in the Court of Common Pleas of Allegheny County at GD-14-008143 with the filing of a complaint including counts of negligence, ejectment, intentional trespass, private nuisance, and an action to quiet title. In response to the Camesis' complaint, PNG filed an answer and new matter, and asserted that it had an easement over the Camesis' property. On August 19, 2014, PNG filed a complaint for injunctive relief against the Camesis at GD-14-14662, seeking to enforce its alleged express right of way. The court subsequently consolidated PNG's complaint with the Camesis' action.

On August 26, 2014, pending resolution of the lawsuits, the court entered a consent order granting PNG access to its facilities via the Camesis' property, to remain in effect until further order of court. The parties filed cross-motions for summary judgment, which were denied by the trial court on November 20, 2015. The court then scheduled PNG's equity action for a non-jury trial, to be held separately from the jury trial scheduled on the

Camesis' action.[1]  After a non-jury trial held on July 19-20, 2016, the trial court issued a memorandum holding that PNG did not have a right of ingress and egress over the Camesis' property pursuant to an express easement, an easement by prescription, or an implied easement by necessity.  By separate order of court dated September 9, 2016, the court entered judgment against PNG and in favor of the Camesis.

On October 6, 2016, PNG filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[2]  PNG now presents the following issues for our review:

1. Were the Judgment entered on September 9, 2016 and Order entered on September 8, 2016 appealable?

2. Whether the trial court erred in its interpretation of an express easement by holding that PNG did not have an express easement that granted it ingress and egress to natural gas facilities constructed after the grant of easement?

_____

[1] The jury trial on the Camesis' action was later postponed pending the outcome of this appeal.

[2] This Court issued a rule to show cause why this appeal should not be quashed, because PNG filed a motion for post-trial relief on September 16, 2016, which was still pending before the trial court.  PNG responded in the form of a letter, in which it asserted that the appeal was proper because judgment had already been entered, and that the order in question was appealable as of right pursuant to Pa.R.A.P. 311(a)(4).  PNG further indicated that its post-trial motion was filed out of an abundance of caution.  Accordingly, the rule was discharged by the Court on November 1, 2016.

3. Whether the trial court erred in its determination that [PNG's] use of a right of way to access its property for a period in excess of 50 years did not give rise to an easement by prescription because its use was not "adverse?"

4. Whether the trial court erred in its determination that [PNG] does not have an easement by necessity to access its landlocked property?

PNG's Brief at 2.

Initially, we must determine whether the appeal from the September 9, 2016 order entering judgment against PNG is properly before this Court. "In this Commonwealth, an appeal may only be taken from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right; 3) an interlocutory order by permission; or 4) a collateral order." *O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063, 1067 (Pa. Super. 2003) (quoting *Morgan Trailer Mtg., Co. v. Hydraroll, Ltd.*, 804 A.2d 26, 29 (Pa. Super. 2002)). PNG asserts that the instant appeal from the order and judgment denying an injunction is interlocutory as of right pursuant to Rule 311(a)(4) of the Pennsylvania Rules of Appellate Procedure.

Rule 311 sets forth in which instances a litigant may take an interlocutory appeal as of right. The Rule states, in relevant part:

**Rule 311. Interlocutory Appeals as of Right**

**(a)** **General Rule.**—An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

…

(4) *Injunctions*.—An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:

(i) Pursuant to 23 Pa.C.S. §§ 3323(f), 3505(a); or

(ii) After a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

Pa.R.A.P. 311(a)(4).

Our Supreme Court examined the plain language of Rule 311(a)(4) in *Wynnewood Development, Inc. v. Bank and Trust Co. of Old York Road*, 711 A.2d 1003 (Pa. 1998):

In construing Rule 311(a)(4), this Court is guided by the rules of statutory construction. Pa.R.A.P. 107. When the words of a statute are clear and free from all ambiguity, the letter of the words cannot be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. 1921(b). This Court finds that the plain meaning of the words contained in Rule 311(a)(4) is that an order refusing a request for an injunction is an interlocutory order appealable as of right unless the order involves an injunction issued pursuant to two explicit provisions of the Divorce Code or the order is in the form of a *decree nisi*.[5]

[5] A *decree nisi* is a "provisional decree, which will be made absolute on motion unless cause be shown against it." Black's Law Dictionary (6th Ed.) at 411.

*Id.* at 1005 (footnote omitted). Here, the denial of PNG's request for injunctive relief was neither made under the Divorce Code nor as a *decree nisi*. Thus, Rule 311(a)(4) mandates a finding that the trial court's order entered on September 9, 2016 was an interlocutory order appealable as of right.

We now address the remainder of PNG's issues arising from the trial court's findings in its equity action against the Camesis. Our standard of

review of a trial court's denial of a request for a permanent injunction is well-settled: "[W]hen reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." ***Buffalo Twp. v. Jones***, 813 A.2d 659, 663-64 (Pa. 2002).

> Ultimately, the grant or denial of a permanent injunction will turn on whether the trial court properly found that the party seeking the injunction established a clear right to relief as a matter of law. Accordingly, we think it proper that appellate review in these cases is whether the lower court committed an error of law in granting or denying the permanent injunction. Our standard of review for a question of law is de novo. Our scope of review is plenary.

***Id.*** at 664 n.4 (citations omitted).

First, PNG argues that it has an express right of ingress and egress over the Camesis' property to service *all* of its appliances, including "regulators, meters, and appliances for the transportation, control and measurement of natural gas over and above the regulator station constructed in 1927…." PNG's Brief at 26. PNG concedes that it does not have the right to construct an additional pipeline under the 1904 Right of Way and 1927 Right of Way I, but avers that the grant provided under 1927 Right of Way II is an unqualified right of ingress and egress to all of its appliances. ***See id.*** at 31-32. However, for the foregoing reasons, we agree with the trial court's determination that PNG's right of ingress and egress is limited by the language in the 1927 easements to access for the

purpose of servicing its 6-inch and 10-inch pipelines and the related regulator station.  *See* TCO at 4.

"A right of way is an easement, which may be created by an express grant."  *Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 550 (Pa. Super. 2004).  "To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument.  Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made."  *Id.* (quoting *Merrill v. Manufacturers Light & Heat Co.*, 185 A.2d 573, 575 (Pa. 1962)).

The trial court found *Sigal v. Manufacturers Light & Heat Co.*, 299 A.2d 646 (Pa. 1973), to be instructive in this case, summarizing that case as follows:

> In *Sigal*, an easement was granted for the installation of one pipeline.  Language allowing for a second pipeline to be installed was simultaneously stricken from the agreement.  Years later, the energy company installed a second pipeline anyway.  [*Id.*] at 647-48.  The Supreme Court held that the intent of the grantor was that the grantee should only install one pipeline as reflected in the changes made to the easement at the time of signing.  Sections of the standard easement were crossed[]out to reflect a change from two pipelines to one pipeline being laid on the property.  *Id.* at 648-49.  The *Sigal* [C]ourt determined the removed language had more weight in situations where words like "lines" were still used rather than "line," as the intent of the parties was clear from the language that had been removed.  *Id.* at 650.

TCO at 7-8.

In **Sigal**, which is analogous to the instant case, the Court made particular reference to the attending circumstances at the time the grant was signed in ascertaining the intention of the parties.[3] The **Sigal** Court concluded that the parties clearly did not intend to grant the right to construct a second pipeline alongside the first pipeline, as such right is exactly what the easement holder would have had if the crossed-out portion of the easement had remained in the document.

Similarly, the grantors in the instant case crossed out and edited the 1904 and 1927 easements "to reflect that only the two pipelines, the 6-inch and 10-inch, and the related regulation facility were to be built and maintained on their property. Ingress and egress to these three items was explicit." TCO at 8. The 1904 Right of Way provided to PNG "the right of way to lay, maintain, operate and remove a pipe line for the transportation of ~~oil or~~ gas," on, over and through the land now owned by the Camesis, "with ingress and egress to and from the same." 1904 Right of Way at 1. The document further provided:

_____

[3] The Court noted that "[t]he attending circumstances were that when the appellant and her husband were presented a standard form grant by the appellee[,] they refused to sign the appellee's standard form grant as printed and only signed the grant after the objectionable clauses were typed over." **Sigal**, 299 A.2d at 649.

> The said grantor to fully use and enjoy the said premises, except for the purposes hereinbefore granted to the said [PNG], which hereby agrees to pay any damages which may arise to crops and fences from the ~~laying,~~ maintaining and operating said pipe line; said damage if not mutually agreed upon, to be ascertained and determined by three disinterested person shall be final and conclusive. ~~And it is hereby further agreed that the said [PNG], … may at any time lay an additional line of pipe over above described lands, upon the payment of a like consideration, and subject to the same conditions; also to have the right to change the size of its pipes, the damage, if any, to crops and surface in making such change to be paid by the said [PNG].~~

*Id.*[4] Following the reasoning in **Sigal**, the trial court found that the crossed-out language was a clear indication that the parties intended to limit PNG's access to the Camesis' property for the purpose of building and maintaining its original two pipelines, the 6-inch and 10-inch, and the related regulator station. **See** TCO at 9-10.

In 1927, as stated *supra*, the McCartneys further granted to PNG, "the right of way to lay, maintain, replace, operate and remove *a pipe line* for the transportation of oil or gas," on, over and through the property now owned by the Camesis, "with ingress and egress to and from the same." 1927 Right of Way I at 1 (emphasis added).[5, 6] Additionally, 1927 Right of Way II

_____

[4] We note that the language crossed out in the 1904 Right of Way is almost identical to the language crossed out in **Sigal**. **See Sigal**, 299 A.2d at 650.

[5] Said document was recorded in the Allegheny County Pennsylvania Deed Book Volume 2344 at Page 236 on December 20, 1927.

[6] Right of Way I further provided:

> The said grantor, heirs or assigns to fully use and enjoy the said premises, except for the purposes hereinbefore granted to the

*(Footnote Continued Next Page)*

expressly grants PNG "the right of way or privilege to construct, lay, maintain, operate, repair and remove a gas regulator or regulators, meter or meters, heater or heaters, and similar appliances, for the transportation, control and measurement of natural gas, together with suitable building ~~or buildings~~ to house the appliances," on the property now owned by the Camesis, "[w]ith ingress and egress over lands of grantors to and from the same.  It being understood that *the appliances herein mentioned or intended are incident to that certain grant of pipe line privileges, made by [the grantors] to [PNG] and bearing date the 28th day of June 1904*."  1927 Right of Way II at 1 (emphasis added).[7]

PNG argues that the only limitation specified by Right of Way II is that there can be only one building on the land, and that there is no justification for the trial court's inference that the appliances were limited to those

*(Footnote Continued)* ————————

> said crops and fences from the laying, maintaining, replacing, operating and removing said pipe line; said damages if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by the said grantor, heirs or assigns, one by [PNG], its successors or assigns, and the third by the two so appointed as aforesaid, and the award of such three persons shall be final and conclusive. Said pipe line to be laid in the street as at present laid through my lands and to extend from the intersection of said street and the Broadhead road to the high pressure gas line which is now on my lands, L. 3628 #2.

**Id.**

[7] Said document was recorded in the Allegheny County Pennsylvania Deed Book Volume 2344 at Page 237 on December 20, 1927.

needed to service the 6-inch and 10-inch pipelines. PNG's Brief at 32-33. However, we believe that PNG's argument blatantly ignores the express language of 1927 Right of Way II, which provides that the appliances mentioned therein "are incident to that certain grant of pipe line privileges" as set forth in the 1904 Right of Way.

Appropriately, the trial court concluded:

The intent of the parties at the time [of] the 1904 and 1927 express easements was clear: two gas lines were to be installed with a regulation facility at their intersection with ingress and egress to and from the same. Because the additional pipelines and regulators added after 1960 were not necessary and reasonable for the maintenance and use of the existing lines, an additional grant was necessary for travel to and from the additional equipment. As a result, PNG does not have an express easement.

TCO at 10. After careful review, we discern that the trial court's conclusion is well-supported by the record and that the court correctly applied the relevant law.

Next, PNG argues that if it does not have an express easement, it has an easement by prescription as a result of "its 50-year open, notorious, continuous and adverse use of the Wanners' and then the Camesis' property to get to its property to construct, repair, inspect and maintain not only the original appliances and pipelines, but also the pipelines and pig launcher that were built in 1960[.]" PNG's Brief at 26. "An easement or right-of-way by prescription arises by adverse, open, continuous, notorious, and uninterrupted use of the land for twenty-one years." **Sprankle v. Burns**, 675 A.2d 1287, 1289 (Pa. Super. 1996). Here, the trial court found that

- 13 -

PNG met the open, notorious, and continuous for over twenty-one years requirements. However, it held that PNG's use of the property was not adverse and, thus, no easement by prescription exists. *See* TCO at 11-14. After careful review, we determine that the trial court correctly applied the law in this case.

In *Adshead v. Sprung*, 375 A.2d 83 (Pa. Super. 1977), a case involving a dispute by two neighbors over a small section of land located between their driveways, this Court stated that Adshead's use of the land was "open and notorious in light of the fact that the driveway was located immediately adjacent to [Sprungs'] property." *Id.* at 84-85. Similarly, in the instant case, PNG has been using a driveway adjacent to the Camesis' property. Thus, we agree with the trial court's conclusion that PNG met the open and notorious requirements for adverse possession. *See* TCO at 11.

Moreover, with respect to the continuous and uninterrupted use for twenty-one years element of a prescriptive easement, the *Adshead* Court explicitly stated that day-to-day use is not required. *Adshead*, 375 A.2d at 85. Here, the trial court noted:

> PNG asserted that it has been using the Camesis' property adversely since the 1960s when the Stage 2 project was developed, as they did not have permission to access the second set of equipment. Thus, the requisite 21 years was met in 1981. The Camesis did not dispute this.
>
> Regarding continuousness, use when needed is sufficient as long as the use is more than sporadic. *Adshead*, 375 A.2d at 85. Because PNG accessed the Stage 2 project regularly via the Camesis' driveway for most regular maintenance as well as

- 14 -

emergency situations, it is clear that the use meets the "as needed" continuity expressed in **Adshead**.

TCO at 12.

With regard to whether PNG's use of the Camesis' property was adverse, the trial court opined:

Although PNG met the "[o]pen and [n]otorious" and "[c]ontinuous" prongs of the test for a prescriptive easement, they did not show that their use of the Camesis' driveway was adverse. Adverse use is defined as the use of "an easement … without leave of the owner of the land over which it passes." **Tarrity v. Pittston Area School District**, 328 A.2d 205, 207 (Pa. [Cmwlth.] 1974). **Tarrity** examined the use of a road by the general public, and also stated that the landowner has the burden of proof to show that "permission or licenses [was] granted." **Id.** PNG claimed that they did not have permission to use the easement, and therefore[,] their use was adverse.

However, because PNG had permission to be there via the express grants of 1927, PNG was permitted to be on the Camesis['] land for an apparently identical use – that is, to access existing equipment.

The case of **Ontelaunee Orchards, Inc. v. Rothermel**[, 11 A.2d 543 (Pa. Super. 1940),] is instructive. **Ontelaunee** involved adverse possession due to a life tenant conveying property in fee simple. [**Ontelaunee**,] 11 A.2d … [at] 544…. In that case, it was found that where "the entry has not been adverse … [one] cannot be permitted to treat his subsequent continued possession to be as adverse." **Id.** at 545. The **Ontelaunee** [C]ourt then declared that before the statute commences to run, the privity between the parties must be "disowned, severed by some unequivocal act." **Id.** [(citing **Bannon v. Brandon**, 75 A.Dec. 655 (Pa. 1859)].[8]

_____

[8] This proposition originally set forth in **Bannon** has been consistently followed. **See Johns v. Johns**, 90 A. 535, 537 (Pa. 1914) (stating "[w]hen the possession of one person is shown to have been once in subordination to the title of another, it will not be adjudicated afterwards adverse, without
*(Footnote Continued Next Page)*

- 15 -

Here, PNG had permission to access their land via the Camesis' property as written in the existing grants. The use was consistent, and without any apparent change until 2010 when new equipment was being built by PNG. PNG never offered the Camesis something that would stand as an "unequivocal act" of severance for the existing right of way grants, and as such, PNG's use of the Camesis' land was not adverse, but rather permissive.

TCO at 13-14.

Finally, PNG argues that an implied easement by necessity was created when the Wanners sold parcels of land to the Camesis, essentially causing the parcel of land purchased by PNG in 1960 to be landlocked. PNG's Brief at 41. Under Pennsylvania law, the following elements must be proven to establish an easement by necessity:

1) The titles to the alleged dominant and servient properties must have been held by one person.

2) This unity of title must have been severed by a conveyance of one of the tracts.

3) The easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.

**Phillippi v. Knotter**, 748 A.2d 757, 760 (Pa. Super. 2000).

In **Phillippi**, a railroad company sold a parcel of land to an employee and was then later taken due to an owner's inability to pay taxes. The land was split into two tracts by a strip of land

_(Footnote Continued)_ ⸻⸻⸻⸻

clear and positive proof of its having distinctly become so, for every presumption is in favor of the possession continuing in the same subordination to the title"). **See also Hover v. Hills**, 117 A. 346 (Pa. 1922); **Jenkins v. McMichael**, 1901 WL 3747 (Pa. Super. 1901); **Cadwalader v. App et al.**, 3 W.N.C. 1 (Pa. 1876).

previously owned by the railroad. The eastern parcel had access to a road while the western did not. The land was eventually purchased by the Phillippis, who used an easement over the Knotters' land to access the western parcel. *Id.* at 758-60.

The Superior Court found in **Phillippi** that the Phillippis did not demonstrate the existence of the necessity at the time of the original severance, nor at the time of the case. *Id.* at 761. The [C]ourt also defines "strict necessity" as not just a mere matter of convenience, but that the land must be without "any access to a public road." *Id.* They also found that because the original severance of the land did not create a strict necessity, that is, no access to a public road, the [C]ourt could not enforce the "intrusive doctrine." *Id.*

TCO at 15-16.

In the instant matter, PNG insists that the easement was, and still is, necessary for PNG to access its land. It claims that the route of ingress and egress via the Camesis' property is the only reasonable point of access to its land and that the need to access its land via the Camesis' property has existed since PNG purchased the land from the Wanners. To the contrary, we conclude that the record supports the trial court's finding that PNG created its need to access its land via the Camesis' property when it selected the site to build the 1960s pipe lines and, thus, the necessity did not exist at the time of severance. *See id.* at 16. Moreover, based on the evidence and testimony presented at trial, the lower court found it to be proven that two other existing rights of way provide PNG with access to two different public roads and that "the rights of way can be traversed on foot and with some machinery." *Id.* at 17. "Since the trial judge is in the best position to judge the credibility of the witnesses, an appellate court may not re-examine the weight to be given to their testimony. Similarly, an appellate court may not

- 17 -

substitute its judgment for that of the trial judge." ***Tagliati v. Nationwide Inc. Co.***, 720 A.2d 1051, 1053 (Pa. Super. 1998).[9]

> The trial court elaborated:

> Though it might be more convenient for PNG to access the Stage 2 projects via the Camesis' driveway, the strict necessity threshold, as defined in ***Phillippi***, is not met. PNG can access their property via two existing rights of way, and only use the Camesis' driveway as a matter of convenience.

> Furthermore, PNG created the necessity in the development of the Stage 2 project in the 1960s. There was no need to access their land by necessity before building the Stage 2 project, as they had an express easement that allowed for access to the Stage 1 project. The need did not exist until PNG expanded their equipment for Stage 2, which was after the Wanners conveyed the land to PNG. Because PNG created the need for access to their Stage 2 project after the purchase of the land, PNG does not have an easement by necessity over the Camesis' property.

TCO at 17. We discern no error of law or abuse of discretion by the trial court.

In light of the foregoing, the September 9, 2016 order entering judgment against PNG and in favor of the Camesis is affirmed.

Order affirmed.

---

[9] ***See also Shaffer v. O'Toole***, 964 A.2d 420, 422-23 (Pa. Super. 2009) (stating "[t]he trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/29/2017